## UNITED STATES ex rel. CHIN CHEUNG NAI v. CORSI, Commissioner of Immigration.

District Court, S. D. New York.
Dec. 16, 1931.
On Reargument Jan. 20, 1932.

James C. Thomas, of New York City, for relator.

George Z. Medalie, U. S. Atty., and Ira Koenig, Asst. U. S. Atty., both of New York City, for respondent.

WOOLSEY, District Judge.

The issue of the relationship as son and father between applicant, Wong Bak Sun, and Wong Fong Ling which is here involved will be referred to a special master to hear evidence thereon and report with his opinion to this court with all convenient speed, provided that, before any order of reference is entered herein, the relator deposit with the clerk of this Court the sum of $300 to cover the fees and expenses of the special master on such reference, or file a bond with approved surety in said sum to secure payment thereof.

I. The decision of the Department of Labor on this application for admission of Wong Bak Sun, who claims to be a son of Wong Fong Ling, admittedly a citizen of the United States, hinged on two considerations: (1) That the Board of Special Inquiry did not believe the relator's evidence; and (2) that it did believe the evidence given by departmental physicians, after a physical examination of the applicant, supplemented by X-ray photographs, to the effect that he was from two to three and a half years older than he claimed to be.

II. The medical evidence was taken in question and answer form according to the suggestion which I made in United States ex rel. Fong On v. Day, 39 F.(2d) 202, 205.[1]

The contention that the medical evidence as to the age of a person is so unreliable as necessarily not to be dependable is without merit.

A question of age is like any other question of fact, and the right of a court to interfere with a departmental decision based on such a question depends on whether the evidence is without substance to support it.

[1] Reversed in this respect. United States ex rel. Fong On v. Day, 54 F.(2d) 990 (C. C. A. 2, January 11, 1932).

Young Fat v. Nagle, 3 F.(2d) 439, 440 (C. C. A. 9).

In the present case, the medical evidence is far more conclusive than in the case just cited, for here the doctors are substantially in accord and all their testimony points one way.

III. The contention that failure to grant a new hearing on additional evidence made the hearing unfair is also without merit.

The granting of a rehearing before an administrative board is as much a matter of the proper exercise of discretion as is the question of a rehearing before a court.

Here there was not any abuse of discretion in refusing a rehearing, for the names of the new witnesses sought to be called by the relator on rehearing were mentioned by the relator himself in answer to questions propounded to him at the first session of the original hearing, and he then stated that he did not purpose calling them as witnesses. After losing his case, however, he offered to call them, and, on the Department's refusal to reopen the case for that purpose, he claims an unfair trial. If any one is blameworthy under these circumstances, it is the relator and not the Department of Labor.

IV. The only serious challenge to the fairness of the hearing which can be wrung from a careful reading of the record thereof is the fact, not mentioned by counsel, that the personnel of the Board of Special Inquiry at Ellis Island was changed from time to time whilst the applicant's case was under consideration.

At the first hearing on September 14, 1931, the Board of Special Inquiry was composed of Inspector M. Rosen as chairman, Inspector W. J. Zucker, and P. J. Sivulich as secretary.

At the second hearing on September 15th, Inspector Zucker was absent, and Inspector E. W. Willard had taken his place.

At the third hearing on September 16th, the Board still consisted of Rosen, Willard, and Sivulich.

At the last hearing on September 25th, at which the vote for exclusion was taken, we find that Inspector Zucker had returned again and had taken Inspector Willard's place.

In a judicial proceeding, the personnel of the court could not be changed during the trial, unless with the consent of the parties.

The reasons for this rule, which I believe to be universally observed, are not far to seek. In the first place, a change in personnel during the trial of an issue of fact would render it impossible for the court properly to chancer questions of credibility, which depend almost wholly on subtle impressions made by witnesses on the tribunal before which they are appearing.

In the second place, a change in personnel inevitably would tend to dilute the sense of individual responsibility for the decision —a feeling which should inhere as strongly in every member of an administrative board as it does in every judge.

The action of administrative boards is not subject to full judicial review on the merits, yet they have to deal with issues of fact in matters of the greatest importance to the interested parties. It seems to me, therefore, necessary, in the absence of written consent of the parties involved, that such boards should be required as a sine qua non of a fair hearing to observe the principle of continuity of personnel which the crystallized experience of mankind recognizes as of cardinal importance especially when facts have to be determined.

The case of the administrative hearing now under consideration by me points my moral well. For the decision turned on the credibility of witnesses, and the fact that Inspector Zucker, who had not been present after the first hearing and had not heard all the relator's evidence, sat in at the last hearing and voted for exclusion on the ground that the relator could not be believed, so vitiates, it seems to me, the possible fairness of the hearing as, in my opinion, to justify intervention of this court.

The fact that it is noted in the record, at the beginning of the last hearing, that "Inspector Zucker familiarizes himself with the testimony taken thus far and also with the collateral records in the case, Inspector Zucker having replaced Inspector E. W. Willard," does not cure the matter because for the trier of facts the important thing is to have the witnesses before him when possible, and, if the parties can produce their witnesses, they are entitled to have them seen.

V. Consequently, following the intimation of the Supreme Court of the United States in Chin Yow v. United States, 208 U. S. 8, 28 S. Ct. 201, 52 L. Ed. 369; Kwock Jan Fat v. White, 253 U. S. 454, 465, 40 S. Ct. 566, 64 L. Ed. 1010, and in accordance with the procedure which I followed,

for somewhat different reasons, in the case of United States ex rel. Fong On v. Day, 39 F.(2d) 202, 209, on the filing by the relator of a surety company bond to be approved by the court in the sum of $300, conditioned to meet the expense of the fees and disbursements involved in a hearing before a special master, or a deposit by the relator of $300 with the clerk of this court, I will refer this case to a special master to hear and report to the court with all convenient speed on the issue here involved of whether the applicant is, as he claims to be, the son of Wong Fong Ling, who is admittedly a citizen of the United States.

I think it is fair thus to deal with this matter because probably the question of the impropriety of a change, during a hearing, in the personnel of the Board of Special Inquiry, has never yet been brought to the attention of the Department of Labor, and to sustain this writ for that reason now would probably be going further than would be fair to the government.

What we have here is another instance of unintentionally bad practice in the Department of Labor which has resulted in the creation of a situation not unlike that before me in United States ex rel. Fong On v. Day, 39 F.(2d) 202, 203, wherein I felt called on to operate in such a zone of uncertainty as made a judicial hearing the only fair avenue of escape.

Settle order in accordance herewith on two days' notice.

### On Reargument.

Reargument on writ of habeas corpus first dealt with by an opinion dated December 16, 1931, in which the hearing was held to be unfair because of change in the personnel of the Board of Special Inquiry.

WOOLSEY, District Judge.

My previous decision herein is changed for the reasons hereinafter stated, and the writ of habeas corpus is dismissed.

I. Almost immediately after my opinion in this matter was handed down on December 16, 1931, the United States attorney made an application for a reargument on two grounds, first, that to comply with the criterion which I had established in that opinion as essential for a fair hearing, namely, that there should be a continuity of personnel in the Board of Special Inquiry in each case, was impracticable, if not impossible, owing to the limited number of inspectors available at Ellis Island, and, second, that the reported cases in which hearings had been challenged on the ground that the personnel of Board of Special Inquiry had been changed during the hearing had uniformly held that the bare fact of change in personnel did not make the hearing unfair.

I granted the reargument, and thereafter the question of whether there must be continuity in personnel in Boards of Inquiry as a condition of a fair hearing was fully argued.

II. The argument ab inconvenienti, of course, cannot control my decision, but I turn aside from consideration of the authorities for a moment to show why, in my opinion, that argument is founded largely on departmental inertia which tends always to exaggerate the difficulties of any change in customary procedure.

Mr. William J. Zucker, Chinese immigrant inspector attached to the office of the commissioner of immigration at the port of New York, who was a member of the Board of Special Inquiry in the instant case, was present at the reargument, and I had the benefit of his point of view based on much practical experience.

I am advised by him through a tabulation given to the United States attorney that between July 2, 1929, and December 21, 1931, the applications for admission of Chinese at Ellis Island were dealt with as follows:

Number of Board of Special Inquiry cases ............................. 446
Number of Chinese admitted.......... 356
Number of admitted with changes in Board of Special Inquiry personnel.. 38
Number of Chinese excluded.......... 90
Number excluded with changes in Board of Special Inquiry personnel........ 35

I think two inferences are fairly deductible from this tabulation.

My first inference is that changes in the personnel of the Boards of Special Inquiry do not necessarily mean that the Chinese applicant will be excluded. But, of course, in cases where the Chinese is admitted, both the government and the applicant are satisfied, and, normally, nothing more is heard of the matter; for it is only in the cases where there is a decision of exclusion that the corrective processes of the court are ever sought.

Now it is shown in this tabulation that the number of Chinese cases in which exclusion was had during the period of about six

months above mentioned was ninety, and that of those there were changes in the personnel of the Board of Special Inquiry in thirty-five cases only. That is a little over one-third of all the exclusion cases, and I therefore make my second inference from the tabulation, which is, that with a little effort it would have been possible, even with the present number of inspectors, to have had continuity in personnel in those thirty-five cases as well as in the other fifty-five of the ninety in which Chinese were excluded.

Furthermore, it must be remembered that in my previous opinion I made the suggestion that the applicant might consent in writing to a change in the personnel of the Board, and by so doing foreclose any later claim that a change in its personnel affected the fairness of the hearing. If the applicant and his advisers prefer this course as an alternative less disagreeable than the possible delay involved in having a Board, consisting of the same personnel, hear his case throughout, the procedure is simple—a written consent could be filed, and the present practice of shifts in personnel could then continue.

It is clear, therefore, I think, that the difficulty of operating under the principle laid down in my first opinion, even if that question was material here, is not great.

III. When, however, I come to examine the authorities cited, I find that my previous opinion is overborne.

The cases in the Circuit Court of Appeals for the Ninth Circuit, which were cited by the government as contrary to the ruling which I made in my opinion of December 16, 1931, on the necessity of a continuity of personnel in boards of inquiry in order that the hearings should be considered fair, are the following: Dong Ying Fun v. Nagle, 5 F.(2d) 310, 312; Hom Moon Ong v. Nagle, 32 F.(2d) 470, 471, 472; Yee Chun v. Nagle, 35 F.(2d) 839, 840; Louie Lung Gooey v. Nagle, 49 F.(2d) 1016.

Judge Sawtelle, in the last-cited case, summarized the previous cases and said [49 F.(2d) at page 1016]:

"Appellant contends that Louie Shaw Gim [the applicant] was denied a fair hearing in that the personnel of the Board of Special Inquiry was changed during the course of the hearing. The Board is an administrative board and not a judicial tribunal, and such changes are within its powers and do not affect the validity of its decisions. Unfairness and arbitrariness do not necessarily follow from the fact that the membership was changed during the time the hearing of the applicant was in progress. 'There is nothing in the petition in the present case to indicate that at the final hearing all the testimony taken in prior hearings was not considered by three members of the board in disposing of the question of the appellant's right to enter the United States.' Hom Moon Ong v. Nagle, 32 F.(2d) 470, 472 (C. C. A. 9). See, also, Dong Ying Fun v. Nagle, 5 F.(2d) 310 (C. C. A. 9)."

These cases are not controlling authorities for me, and, standing alone, I do not think that they would persuade me to change the opinion which I have already expressed, for they do not, it seems to me, deal in any way with the reasons which I gave for the necessity of continuity in personnel in administrative boards.

When, however, the decision of the Supreme Court of the United States in the case of Quon Quon Poy v. Johnson, 273 U. S. 352, 47 S. Ct. 346, 71 L. Ed. 680, is added to the decisions in the Ninth Circuit just mentioned, I feel that I must reluctantly admit that the Quon Poy Case is, by clear implication, an authority for the government in the instant case, and that it must be deemed a casting weight which necessitates my changing my previous decision.

An examination of the record and briefs in the Quon Poy Case, which were called to my attention by Mr. Koenig, shows, first, that in that case there were three examinations of the applicant by a single inspector, Stockwell; that Stockwell was the only inspector who sat on the Board of Special Inquiry throughout the hearings subsequently held, so that the personnel of the Board changed, and that practically all the evidence on the applicant's behalf had been taken before Stockwell alone.

The appellant's counsel in his brief before the Supreme Court in the Quon Poy Case, after describing the preliminary examinations before Stockwell and the witnesses there called, says in its statement of the case, "He (the applicant) was then on the date last named (September 12, 1924) first taken before a Board of Special Inquiry, so-called, and was informed that the testimony given before the single inspector as aforesaid" would be made a part of the proceeding.

There, after a summary of what occurred at the first hearing before the Board of Special Inquiry, the brief proceeds as follows: "Without further examination, a Board of Special Inquiry not the same as before, on

September 12th, entered a not satisfied decision; and on October 1, 1924, more than three months after his arrival, *another* Board (italics in the brief), only one member of which had seen any of the witnesses, announced to this boy 'You have been refused admission to the United States by this Board as a Chinese alien.' "

The brief proceeds:

"The questions presented in this case are the following, to wit:

"I. Was the petitioner deprived of his liberty without fair trial in accordance with due process of law?"

As a foundation for that question, counsel for the applicant referred to his request for rulings and his 'assignments of error to the effect that the court "erred in refusing to rule as requested by the petitioner that the trial accorded to the petitioner by the Department of Labor was unfair, unjust and not in accord with due process of law under the Constitution and Laws of the United States."

The point principally labored in the brief was that the single inspector, Stockwell, had practically tried and determined the whole case until a board of three inspectors intervened at the end of a long trial. In the first point of the argument, referring to section 17 of the Act of Congress of February 5, 1917 (8 USCA § 153), the brief said: "Said section 17 says the decision 'shall be rendered' on appeal 'solely upon the evidence adduced before the Board of Special Inquiry.' It is clear that this law requires that the witnesses shall appear before such Board, and that it shall be *one* Board (italics in the brief); and that the case shall be decided by one and the same Board which has seen the witnesses and heard their testimony."

This argument raises the same point as is raised in my first opinion, and so that point must be considered to have been brought to the attention of the Supreme Court.

In its opinion, Quon Quon Poy v. Johnson, 273 U. S. 352, 47 S. Ct. 346, 71 L. Ed. 680, the court did not specifically mention the point, but Justice Sanford, who wrote the opinion, did, however, say, at page 354 of 273 U. S., 47 S. Ct. 346, 347, as a ground claimed by the applicant for granting his writ of habeas corpus, that "he had been denied a fair hearing and opportunity to establish his citizenship by the Department of Labor; that the procedure in the Department by which he had been declared an alien denied him the due process of law to which he was entitled under the Constitution."

On page 355 of 273 U. S., 47 S. Ct. 346, 347, the court summarized the proceedings below, and showed that it was aware that there had been a long preliminary examination before a single inspector, who later, with others, made up the changing Board of Inquiry, and at page 357 of 273 U. S., 47 S. Ct. 346, 348, Justice Sanford said: "The contention that the hearing was invalid because the greater part of the testimony was taken before a single inspector and introduced before the Board, is based upon a provision in the same section of the Act that on an appeal from the Board of Special Inquiry the decision shall be rendered 'solely upon the evidence adduced before the Board.' There is, however, no suggestion whatever in the Act that the evidence adduced before the Board of Special Inquiry must be taken in its presence. We see no reason to doubt that evidence properly taken before an inspector, Section 16 [8 USCA § 152]—which has substantially the same effect as a deposition taken in an ordinary case—may be introduced before the Board and considered by it. See Kwock Jan Fat v. White, 253 U. S. 454, 458, 40 S. Ct. 566, 64 L. Ed. 1010, 1012. And here the petitioner offered no objection to the introduction of such testimony and no application was made to recall the witnesses for re-examination by the Board."

The dismissal of the writ by Judge Lowell in the District Court for Massachusetts was therefore affirmed, clearly on the ground (see page 358 of 273 U. S., 47 S. Ct. 346, 348) that the applicant had had a fair hearing, and that the Department had not acted in any unlawful or improper way or in any way abused its discretion.

Consequently, although the matter is not as clear as it would be if the Supreme Court had expressed itself in more detail about continuity of personnel in the Board, there is no doubt that, apparently, it had the question before it and decided it in a way which was contrary to the position taken by me in my first decision herein.

The situation really deducible from all the authorities cited is, therefore, that the entire record on which the exclusion is decided must be before whatever Board is asked to decide the question of exclusion, but that the personnel of the Board is left at large and is subject to change.

Of course, neither here nor in any of the cases cited was there a suggestion that the change in personnel was made with a sinister intent—as, for example, to secure inspectors who would vote for exclusion. Such a situation would involve other considerations than are here present. For here the only question is whether and to what extent a fact finding administrative board should be required to follow the practice of the courts and maintain continuity of personnel throughout each case which comes before it.

My views, as previously expressed, remain unchanged. but I yield in my decision to the weight of higher authority.

IV. Inasmuch as I feel, therefore, that I am bound to hold under the authority of the Quon Poy Case that the hearing was not unfair in the instant case, the result is that the writ must be dismissed, and the relator must, if so advised, take his remedy by appeal.

Settle order on two days' notice.