### UNITED STATES ex rel. MINUTO v. REIMER, Com'r of Immigration and Naturalization.

### No. 337.

Circuit Court of Appeals, Second Circuit.

April 13, 1936.

Lamar Hardy, U. S. Atty., of New York City (Thomas McCall and Francis H. Horan, Asst. U. S. Attys., both of New York City, of counsel), for respondent-appellant.

Gaspare M. Cusumano, of New York City, for relatrix-appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is an appeal from an order sustaining a writ of habeas corpus discharging the relatrix, an immigrant alien, from the custody of the immigration authorities. She was denied admission to the country and the disallowance of the writ of habeas

corpus would have resulted in her being shipped back to Italy, the domicile of her origin. She first entered the United States twenty-one years ago and remained here until April, 1935, when she went back to Italy for a visit. Before leaving this country she had obtained a re-entry permit. Her husband had died in Italy about sixteen or seventeen years ago. She had a niece in New York whom she had practically brought up from childhood and with whom she had lived, and four children residing in Italy. She was seventy years old, was unable to read or write; her niece was unwilling to maintain her and requested that she be sent back to the old country. Maddalena Minuto, a friend who sued out the writ of habeas corpus in the alien's behalf, expressed willingness to take her into her own home and support her as her own mother, but said that she was not able to furnish a bond that the alien would not become a public charge.

Upon the return of the alien from Italy, she presented her re-entry permit at a hearing before a Board of Special Inquiry composed of three immigrant inspectors and submitted to the board proof that she had $100 in cash and was in possession of a passbook showing 11,378 lires (approximately $1,000) in postal savings in Naples. The board, after receiving this and other evidence, adjourned the hearing because of a letter from her niece saying she could not maintain the immigrant and asking for her exclusion. The hearing was continued later before a board in which Miss Cohen, the secretary, took the place of one of the former members. The record of the first hearing was, however, before the second board.

■ The medical certificate made at the time of embarkation by only a single physician stated that the alien had been examined and was found "to be afflicted with senility which may affect ability to earn a living." A majority of the board determined that no one in the country was legally responsible for the alien's support and that she should be excluded (1) as a person afflicted with a physical defect which might affect her ability to earn a living, and (2) as a person likely to become a public charge. She appealed to the Secretary of Labor, who affirmed the decision of the board.

Counsel for the alien argues that her exclusion was erroneous because: (1) The medical certificate did not comply with Immigration Rule 12 (c), paragraph 2, of January 1, 1930, in that it failed to "particularly describe the nature, character, and extent of the physical defect which it is certified may affect the ability of the alien to earn a living," and for that reason the Board was obliged under Rule 12 to call the "examiner as a witness and interrogate him fully as to the particular nature, character, and extent of the affliction certified," which it did not do; (2) the niece of the relatrix should have been called as a witness to show that she was not under such a financial obligation to her aunt as prompted her to seek the exclusion of the immigrant; (3) the personnel of the board ought not to have been changed during the hearings, and the secretary was not a proper member of it; (4) the alien was not likely to become a public charge; (5) the alien had established a domicile in the United States for more than seven consecutive years and it was an abuse of discretion for the Secretary of Labor not to admit her pursuant to the discretion lodged in that official under section 136 (p), title 8 of the United States Code (8 U.S.C.A. § 136 (p).

The medical certificate did not describe the nature, character, and extent of the physical defect which it was certified might affect the ability of the alien to earn a living. In a practical sense it did no more than say that she was seventy years old. While that fact would tend to show a lessening of vigor, it certainly would not indicate the extent or the character of any impairment to which the immigrant was subject. Rule 12 (c) (2) has little meaning if it can be complied with by stating such generalities as "senility."

■ It was not necessary for the government to call the alien's niece as a witness. The suggestion that she might have been shown to be under a financial obligation to her aunt is at best mere speculation, and though well founded it would still be the fact that she was under no legal obligation to support her aunt and could not be compelled to take her in merely because she owed her aunt money.

■ The change in the personnel of the Board furnishes no proof that there was not a fair hearing. The minutes of the first hearing were made part of the record at the second, so everything was before the board that took final action. It is well settled that a maintenance of continuity of personnel is not necessary so long as all the essentials of a fair hearing are observed

**168**

by the board exercising ultimate judgment. United States ex rel. Chin Cheung Nai v. Corsi (D.C.) 55 F.(2d) 360, affirmed 64 F. (2d) 1022 (C.C.A.2); Louie Lung Gooey v. Nagle, 49 F.(2d) 1016 (C.C.A.9); Hom Moon Ong v. Nagle, 32 F.(2d) 470 (C.C.A. 9). The presence of the secretary upon the board as a member was not unlawful or even irregular. Section 153, U.S.C., title 8 (8 U.S.C.A. § 153), provides that: "Each board shall consist of three members, who shall be selected from such of the immigrant officials in the service as the Commissioner General of Immigration, with the approval of the Secretary of Labor, shall from time to time designate as qualified to serve on such boards." U.S.C., title 8, section 109 (8 U.S.C.A. § 109) provides that: "Immigrant inspectors and other immigration officers, clerks, and employees shall be appointed and their compensation fixed and raised or decreased from time to time by the Secretary of Labor, upon the recommendation of the Commissioner General of Immigration." While this last section contrasts clerks with "officers," there is nothing to contrast a clerk with "officials." In Ex parte Momo Tomimatsu (D.C.) 232 F. 376, it was held that the latter term was broad enough to include clerks and other employees and to sanction the designation of a clerk as a member of a board of special inquiry. See, also, Dong Ying Fun v. Nagle, 5 F.(2d) 310 (C.C.A.9), to the same effect. We think the practice of the Department in designating the secretary to act as a member of the board was warranted by the statute.

While the medical certificate did not conform to the rule and apprise the board of the extent or character of the physical impairment that would affect the ability of the alien to earn a living, sufficient foundation appeared in the record for the finding that she was likely to become a public charge. She was a woman seventy years old with an increasing chance of becoming dependent, disabled, and sick. No one was under any obligation to support her, and her niece, who was the only person likely to be able to do so, had declined to assume the burden. She had only $100 immediately on hand and the additional $1,000 was in a postal savings bank in Naples. In view of European conditions such a deposit might not have been readily available. But even if the alien's entire resources were promptly brought within the United States, they were insufficient to insure against her becoming a public charge. The Board of Inquiry was within its rights in finding that she was likely to become a public charge and the secretary in refusing to exercise discretion to modify the rigor of the exclusion order.

The order is reversed.