EASTLAND CO. v. FEDERAL COMMUNICATIONS COMMISSION (PORTLAND BROADCASTING SYSTEM, Intervener). CONGRESS SQUARE HOTEL CO. v. SAME.*

Nos. 6772, 6773.

United States Court of Appeals for the District of Columbia.

Decided June 28, 1937.

*Writ of certiorari denied 58 S.Ct. 120, 82 L.Ed. ——.

**468**

Paul M. Segal and George S. Smith, both of Washington, D. C., for appellants.

Arthur W. Scharfeld and Philip G. Loucks, both of Washington, D. C., for intervener.

Hampson Gary, George B. Porter, Fanney Neyman and Frank U. Fletcher; all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

MARTIN, Chief Justice.

These appeals are brought under sections 402 (b) and (c) of the Communications Act of 1934, 48 Stat. 1064, 1093 (47 U.S.C.A. § 402 (b, c), relating to the granting by the Federal Communications Commission of licenses for the construction and operation of radio broadcasting stations. The authority of this court in such cases is defined by subsection (e), § 402 of the act (47 U.S.C.A. § 402 (e) as follows: "that the review by the court shall be limited to questions of law and that findings of fact by the Commission, if supported by substantial evidence, shall be conclusive unless it shall clearly appear that the findings of the Commission are arbitrary or capricious."

The decision of the Commission in the cases now upon appeal relates to certain applications of the Portland Broadcasting System, Inc., hereinafter called the Portland System, the Eastland Company, and the Congress Square Hotel Company, as intervener, for licenses permitting the use of broadcasting frequency 640 kc. for limited time of operation.

In addition to these applications, ten others involving numerous requests and proposals relating to broadcasting frequency 640 kc. were heard and denied by the Commission concurrently with those herein appealed. No appeal, however, was taken in any of the other ten applications. The present hearing therefore is confined to the appeals wherein the Eastland Company and the Congress Square Hotel Company, respectively, are appellants, in both of which the Portland System is appellee.

On April 5, 1934, the Portland System, a Maine corporation, applied to the Commission for authorization to construct a new radio station at the city of Portland, Me., for unlimited daytime operation upon frequency 640 kc., with 500 watts power, "call letters new."

On August 3, 1934, the Eastland Company, also a Maine corporation, applied to the Commission for authorization to construct a new radio station at the city of Portland, Me., for unlimited daytime operation upon frequency 640 kc., power 100 watts, "call letters new."

At the time in question the Congress Square Hotel Company was the owner and licensee of an existing radio broadcasting station at Portland, Me., known by the call letters WCSH, it being the only broadcasting station in Portland at that time. It operated upon frequency 940 kc., with power of 1 kw. nighttime, 2½ kw. daytime, and unlimited hours of operation. This station, which was owned by the East-

land Company, opposed the granting of the application of the Portland System for authority to construct a new broadcasting station at Portland, and it has appealed from the Commission's order granting such application. The appeal of station WCSH is based chiefly upon the ground that such a station would unjustly prejudice the broadcasting patronage of that station.

It may be noted that the contestants both apply for authorization to use frequency 640 kc. in the stations proposed by them. This is a clear channel under the Commission's Rule 72, that is a channel upon which only a single station is permitted to operate during night hours. During daylight hours, however, it is possible to allow duplication on such a frequency, inasmuch as (according to the theories of those learned in the art) the so-called sky-wave or ray, which is reflected in the upper atmosphere during the night hours, does not return to earth with sufficient intensity to cause interference. Such stations are designated by Rule 77 of the Commission as "limited time" stations. The frequency 640 kc. was regularly assigned by the Commission to broadcasting station KFI, located at Los Angeles, Cal., and accordingly the applications herein in question were for daytime operation only.

The Commission, after hearing the present applications, granted that of the Portland System, denied that of the Eastland Company, and concurrently overruled the objection of the Congress Square Hotel Company. The present appeals were then taken.

The brief of the appellants sets out four contentions in support of their appeals. The first of these reads as follows: "1. The order and decision of the Broadcastng Division are invalid as having been made by a division of the Commission, the majority of which neither heard the evidence nor passed upon a report thereof."

Upon an examination of the record we are convinced that this contention must be overruled.

Under section 4 (a) of the Communications Act, supra (47 U.S.C.A. § 154 (a), it is provided that the Federal Communications Commission shall be composed of seven commissioners. Under section 5 (a) (47 U.S.C.A. § 155 (a), it is provided that the Commission is authorized by its order to divide the members thereof into not more than three divisions, each to consist of not less than three members, and that any commissioner may be assigned to and may serve upon such division as the Commission may direct; and in case of a vacancy in any division the chairman of the Commission may temporarily serve. By section 5 (b) of the act (47 U.S.C.A. § 155 (b) it is provided that the Commission may assign or refer any of its work or functions to any of such divisions for action thereon. By section 5 (c) of the act (47 U.S.C.A. § 155 (c) it is provided that each division so constituted shall have power and authority by a majority thereof to hear and determine as to any of the work or functions assigned to it for action by the Commission, and shall have all the jurisdiction and power conferred by law upon the Commission and be subject to the same duties and obligations, and that any decision made by such division in respect of any matter so assigned to it shall have the same force and effect as if made by the Commission.

Under Commission Order No. 1, passed July 17, 1934, Commissioners Gary, Brown, and Sykes were assigned for duty on the Broadcasting Division, and served as such when the applications involved in this case came on for hearing, to wit, from October 22 to November 2, 1934. On January 1, 1935, Commissioner Gary resigned, and was succeeded by Commissioner Prall. On March 9, 1935, Commissioner Brown was assigned to the Telegraph Division, and was succeeded as a member of the Broadcasting Division by Commissioner Case. The applications involved in this case were decided on May 1, 1936, by the Broadcasting Division composed of Commissioners Sykes, Case, and Prall.

The record discloses that oral testimony was introduced in the case beginning October 22, 1934 and that afterwards various depositions and publications were introduced as evidence in the case. Accordingly on May 1, 1936, the Division which entered the decision in the case was composed of commissioners who had not heard the oral testimony but nevertheless had been members of the Division for more than a year prior to the date of the decision, and during that time the stenographic reports of the oral testimony and copies of the written evidence were all in their possession and under consideration by them.

No question is raised by the appellants as to lack of notice, or opportunity to present evidence and file briefs or as to

the manner in which the hearing itself was conducted. The appellants were accorded ample and timely notice and a full opportunity to be heard. The commissioners who entered the decision report that they had fully considered the evidence and the entire record of the case.

The contention of appellants is that they were entitled to have their case passed upon by the identical members of the Broadcasting Division who sat at the presentation of all of the evidence in the case, and that the procedure followed amounted to a denial of a lawful hearing and trial of the case, inasmuch as two members who joined in the decision did not hear the oral evidence when delivered by the witnesses in person.

In our opinion the partial change in the personnel of the Division which decided the case did not invalidate its decision, for it was nevertheless the decision of the Division which acted upon the evidence.

In section 4, subsection (j), of the act, supra (47 U.S.C.A. § 154 (j), it is provided that: "The Commission may conduct its proceedings in such manner as will best conduce to the proper dispatch of business and to the ends of justice. No commissioner shall participate in any hearing or proceeding in which he has a pecuniary interest. Any party may appear before the Commission and be heard in person or by attorney. Every vote and official act of the Commission shall be entered of record, and its proceedings shall be public upon the request of any party interested. The Commission is authorized to withhold publication of records or proceedings containing secret information affecting the national defense."

Rule 106.8 of the Commission provides as follows: "106.8 Except as otherwise provided herein, the rules of evidence governing civil proceedings in the courts of the United States shall govern formal hearings before the Commission; Provided, however, That the Commission reserves the right to relax such rules in any case where in its judgment the ends of justice will be better served by so doing."

It is provided by sections 409 (a) and (e) of the act, supra (47 U.S.C.A. § 409 (a, e), as follows: "§ 409. (a) Any member or examiner of the Commission, or the director of any division, when duly designated by the Commission for such purpose, may hold hearings, sign and issue subpenas, administer oaths, examine witnesses, and receive evidence at any place in the United States designated by the Commission; except that in the administration of Title III [relating to broadcasting] an examiner may not be authorized to exercise such powers with respect to a matter involving (1) a change of policy by the Commission. * * *

"(e) The testimony of any witness may be taken, at the instance of a party, in any proceeding or investigation pending before the Commission, by deposition, at any time after a cause or proceeding is at issue on petition and answer."

The testimony in the present case according to statute would have been taken by an examiner and reported to the Commission but this course was not followed inasmuch as the questions raised by the ten applications not involved in this appeal concerned a "change of policy" of the Commission. It is plain that much of the testimony in such cases must be received by the Commission in stenographic reports, inasmuch as the Commission's jurisdiction extends throughout the entire country and it would often be very expensive for witnesses to come to Washington to testify orally and impossible for the Commission personally to go to various different parts of the country to hear oral evidence. See Garden City Feeder Co. v. Commisioner of Internal Revenue (C.C.A.) 75 F.(2d) 804; Van Buren Water Co. v. Van Buren, 152 Ark. 83, 237 S.W. 696; State ex rel. American Telechronometer Co. v. Baker, 164 Wash. 483, 2 P.(2d) 1099, 1105; Union Public Service Co. v. Corporation Commission, 140 Kan. 722, 37 P.(2d) 1010.

In the Telechronometer Case, supra, the court said: "The members of the department who made the order * * * were the lawfully constituted department of public works, they had before them the entire record, and it was their duty to enter such order thereon as in their opinion was proper. * * * The fact that changes took place in the personnel of the department during the course of the hearing avails respondent nothing in its attack upon the order which is the basis of this proceeding."

Moreover, it is provided by section 409 (e) of the act (47 U.S.C.A. § 409 (e) that the Commission may grant a rehearing of any decision made by a Division, or by the Commission, if sufficient reason appear therefor.

No motion, however, was made by appellants for a rehearing before the Division, nor before the Commission. It seems

therefore that no injustice has resulted to appellants because of the circumstances attending the hearing of the case.

▮ The remaining contentions of the appellants challenge the findings of the Commission upon the facts as disclosed by the evidence. In respect to these findings it must be remembered that the court is not to be governed only by the weight of the evidence in cases of contradictions, but must affirm the decision of the Commission as to the facts, if supported by substantial evidence, unless the decision is "arbitrary or capricious."

▮ The appellants for their second contention claim that the order and decision of the Broadcasting Division are in violation of the Commission's rule against repetition of applications. We think this contention is not well founded. The record discloses that in February 1934 the Commission denied an application of the Portland Maine Publishing Company for authorization to erect a new radio broadcasting station in Portland. In April 1934 the Commission received the application from the Portland System which is now in question. The record discloses that these are separate corporations and that the Portland Maine Publishing Company holds less than half of the stock of the Portland System, and that the latter company is not controlled by the former one. The testimony upon this subject is made the basis of conflicting claims by the parties, but we think that it is sufficient to support the Commission's decision.

The appellants also contend that it was error for the Commission to grant the application of the Portland System without a showing that the applicant was financially able to construct and operate the proposed station. Upon this subject, however, the Commission makes the following statement in its decision: "However, in view of the fact that the applicant corporation already has paid into its treasury $25,000 in cash, and the testimony under oath of its principal witnesses that the additional $25,000 will be forthcoming, we believe any doubts which may be raised in this record as to the financial ability of the Portland Broadcasting System, or the legal or financial ability of the Portland Maine Publishing Company to pay for the stock in the applicant corporation for which it has subscribed, should be resolved in favor of the applicant and the publishing company."

We think the testimony is sufficient to support this finding.

▮ The appellants for their fourth contention claim as follows: "The denial of the application of the Eastland Company and the granting of that of the Portland Broadcasting System, Inc., violated the facilities-distribution section of the Communications Act of 1934 and the quota regulations of the Commission."

The act of 1934 (section 307 (b), 48 Stat. 1083, 47 U.S.C.A. § 307 (b), commonly known as the "Davis Amendment," 45 Stat. 373, provides "That the people of all the zones established by this title are entitled to equality of radio broadcasting service, both of transmission and of reception, and in order to provide said equality the Commission shall as nearly as possible make and maintain an equal allocation of broadcasting licenses, of bands of frequency, of periods of time for operation, and of station power, to each of said zones when and insofar as there are applications therefor; and shall make a fair and equitable allocation of licenses, frequencies, time for operation, and station power to each of the States and the District of Columbia, within each zone, according to population."

Under this statute the Commission by paragraph 6 (g) of its Rules has provided: "(g) Since the act provides for the equalizing of radio facilities among zones and among States, 'as nearly as possible', the Commission may allow a slight departure, plus or minus, from an exact mathematical estimate."

It appears from the record that at the time of the hearing the state of Maine and first zone were under quota on both day and night assignments; that the grant of Portland System's application adds to the quota of the state of Maine and first zone 0.15 units night and 0.3 units day. This would make the state overquota .08 units night and leave it under quota 0.49 units day. The first zone would still be under quota 1.84 units night and 22.45 units day. The Commission was of the opinion, and so found, that the increase in night quota of the state occasioned by the grant of the Portland System's application, which brought its assigned quota slightly over that due, was justified in view of the need shown, and was consistent with the terms

of the Davis amendment which provides for "equal" facilities "as nearly as possible."

The Commission was also of the opinion that the evidence in the record affirmatively indicated that the city of Portland, county of Cumberland, could well support an additional radio broadcasting station without affecting adversely the services of radio station WCSH or the income or revenues of the Congress Square Hotel Company, licensee thereof and intervener herein. This was the only ground upon which the intervention of the latter company was made, and the finding is therefore conclusive of its contention.

The Commission concludes its decision as follows: "This brings us to the application of the Portland Broadcasting System for a new station in Portland, Maine. It appears from the record, and we so find, that this applicant is legally, technically, financially and otherwise qualified to operate a station of the kind and class applied for; that the service proposed by this applicant appears to be meritorious and of interest to the listening public in that area; that this application may be granted without resulting in interference to the fair and efficient service of any other existing station, and that public interest, convenience and necessity will be served by the granting of this application."

The decision of the Federal Communications Commission is hereby affirmed.

STEPHENS, Associate Justice.

I dissent. As I understand the facts the witnesses were heard and the argument had before Commissioners Gary, Brown and Sykes, but the decision was rendered by Commissioners Sykes, Case and Prall.

Two modes of procedure are available under the statute. Under Section 409 (a) [48 Stat. 1096, 47 U.S.C.A. § 409 (a) (Supp.1936)] it is required that "In all cases heard by an examiner the Commission shall hear oral arguments on the request of either party." Under Section 309 (a) [48 Stat. 1085, 47 U.S.C.A. § 309 (a) (Supp. 1936)], where no hearing before an examiner is contemplated, it is provided that the "Commission . . . shall afford such applicant an opportunity to be heard under such rules and regulations as it may prescribe." Reading these two sections together I think it clear that Congress intended that the Commission might proceed either by examiner or by itself; that if it proceeded by examiner, while it thus need not hear the witnesses but need only read the evidence as taken by the examiner, still it must hear oral argument; that if it proceeded by itself it must hear the witnesses. And I think Congress meant that when the Commission, proceeding by examiner, and therefore merely reading the evidence, heard oral argument, at least a majority of the Commission that heard the oral argument must also decide the case. To make oral argument to those who are not to decide would be vain. And I think further that Congress meant that when the Commission proceeded by itself, and itself, therefore, heard the witnesses, at least a majority of the Commission that heard them must decide the case. To present witnesses to those who are not to decide would also be vain.

Congress is well aware of the exigencies under which administrative tribunals burdened with a great volume of public business requiring speedy disposition operate, and customarily permits them to dispense with unnecessary formalities. But I think that in the absence of language clearly permitting it, we should not conclude that Congress intended a Commission to dispense with oral argument before, or with hearing of the witnesses by, those who are to decide. Neither of these procedures is a formality. On the contrary, each is a substantial aid to correct decision.

The authorities cited in the majority opinion are, I think, not persuasive because of material differences from the instant case in the facts or statutes involved.

In respect of the cases in the United States District Court and the United States Circuit Courts of Appeals relied upon by the appellee and not mentioned in the majority opinion, to wit, Louie Lung Gooey v. Nagle (C.C.A.) 49 F.(2d) 1016; United States ex rel. Chin Cheung Nai v. Corsi (D.C) 55 F.(2d) 360; United States ex rel. Minuto v. Reimer (C.C.A.) 83 F.(2d) 166: These three cases undoubtedly countenance discontinuity in the personnel of Boards of Special Inquiry in the Department of Labor. But while entitled to respectful consideration they are not binding here, and are moreover, I think, not highly persuasive, for the reason that the statute therein involved is not, as is that involved in the instant case, explicit as to procedure. Moreover, I am myself impressed, and for the cogent reasons which he gives, with the views expressed by District Judge

Woolsey in his first opinion in United States ex rel. Chin Cheung Nai v. Corsi, supra. He there said:

"In a judicial proceeding, the personnel of the court could not be changed during the trial, unless with the consent of the parties.

"The reasons for this rule, which I believe to be universally observed, are not far to seek. In the first place, a change in personnel during the trial of an issue of fact would render it impossible for the court properly to chancer questions of credibility, which depend almost wholly on subtle impressions made by witnesses on the tribunal before which they are appearing.

"In the second place, a change in personnel inevitably would tend to dilute the sense of individual responsibility for the decision—a feeling which should inhere as strongly in every member of an administrative board as it does in every judge.

"The action of administrative boards is not subject to full judicial review on the merits, yet they have to deal with issues of fact in matters of the greatest importance to the interested parties. It seems to me, therefore, necessary, in the absence of written consent of the parties involved, that such boards should be required as a *sine qua non* of a fair hearing to observe the principle of continuity of personnel which the crystallized experience of mankind recognizes as of cardinal importance especially when facts have to be determined." [55 F.(2d) 360, at page 361]

I think that the Supreme Court in Quon Quon Poy v. Johnson, 273 U.S. 352, 47 S.Ct. 346, 71 L.Ed. 680, does not rule on the question of the effect of discontinuity of personnel.