**TWIN CITY MILK PRODUCERS ASS'N et al. v. McNUTT, Federal Security Adm'r (AMERICAN DRY MILK INSTITUTE, Inc., et al., Interveners).**

No. 505, Original.

Circuit Court of Appeals, Eighth Circuit.

Sept. 9, 1941.

Louis E. Hart, of Chicago, Ill. (W. E. Rumble, of St. Paul, Minn., Addison M. Parker, of Des Moines, Iowa, and Charles W. Wilson, of Washington, D. C., on the brief), for petitioners and interveners.

William W. Barron, Atty., Department of Justice, of Washington, D. C. (Wendell Berge, Asst. Atty. Gen., Victor E. Anderson, U. S. Atty., of St. Paul, Minn., and Melva M. Graney, Atty., Marc C. Reno, Atty., Department of Justice, and William Goodrich, Attorney, Federal Security Administration, all of Washington, D. C., on the brief), for respondent.

Before WOODROUGH, JOHNSEN and VAN VALKENBURGH, Circuit Judges.

JOHNSEN, Circuit Judge.

This is a petition to review an order of the Federal Security Administrator, fixing a definition and standard of identity for "dried skim milk, powdered skim milk, skim milk powder", as a human food.[1]

The regulation was promulgated under section 401 of the Federal Food, Drug and Cosmetic Act, 52 Stat. 1046, 21 U.S.C.A. § 341, which provides: "Whenever in the judgment of the Secretary [of Agriculture] such action will promote honesty and fair dealing in the interest of consumers, he shall promulgate regulations fixing and establishing for any food, under its common or usual name so far as practicable, a reasonable definition and standard of identity, a reasonable standard of quality, and/or reasonable standards of fill of container * * *." At the time the order was issued, the authority of the Secretary of Agriculture under the Act had been transferred to the Federal Security Agency.[2]

The regulation is as follows: "§ 18.540. Dried Skim Milk, Powdered Skim Milk, Skim Milk Powder—Identity. Dried Skim Milk, Powdered Skim Milk, Skim Milk Powder, is the food made by drying sweet skim milk. It contains not more than five per cent of moisture, as determined by the method prescribed in 'Official and Tentative Methods of Analysis of the Association of Official Agricultural Chemists', Fourth Edition, 1935, page 282, under the caption 'Moisture-Tentative'. The term 'skim milk' as used herein means cows' milk from which the milk fat has been separated."[3]

The first contention of petitioners and interveners is that the order should be declared invalid because it does not show that the regulation was promulgated on the basis or for the purpose authorized by the statute. Under previous declarations of the Supreme Court, there is merit in this contention.

 The promulgating authority granted to the Administrator is a quasi-legislative power. The statute authorizes its exercise when, in his judgment, such action will promote honesty and fair dealing in the interest of consumers. Such a judgment is intended to be the foundational basis of his official action. His right to make the judgment is of course equivalent to a discretionary power to act, which cannot be judicially reviewed. United States v. George S. Bush & Co., Inc., 310 U.S. 371, 380, 60 S.Ct. 944, 84 L.Ed. 1259. But where action is undertaken by him, the statute contemplates that he shall not arbitrarily have attempted to exercise his power, but only upon a conscientious judgment derived from a consideration of the facts and conditions in the situation to which the regulation is to be applied. Absent the right to a direct judicial review of the order, the presumption of regularity which ordinarily attaches to official action would probably be conclusive of the question.[4] But where a court is charged with the duty of reviewing the validity of an administrative agency's order, it has, up to the present time at least, refused the stamp of judicial approval, unless the order affirmatively demonstrated a compliance with all express and implied conditions underlying the exercise of the power. And so here, if it was the Administrator's judgment that his action would promote honesty and fair dealing in the interest of consumers, this fact would be conclusive of his right to exercise the regulatory power; but, for his order to be given affirmative judicial approval, as Congress has required in making provision for a review proceeding, it would have to be indicated that such judgment was actually made the basis of his action.

This requirement is not intended as an arbitrary symbol. The great liberal minds of the Supreme Court, which have declared the need for the prescription, can hardly be accused of being worshippers of mere form. During an evolutionary period, it is a precaution that undoubtedly has aided in fostering public confidence and in winning acceptance for the processes of administrative law. Possibly it has served to safeguard against hasty or arbitrary action, by reminding those, to whom the power has been given, of their necessary responsibility in the exercise of that power. Doubtless, it has assuaged the legalistic conscience, by the assurance that only responsible action

---

[1] The petition was filed under § 701 (f) of the Federal Food, Drug and Cosmetic Act of June 25, 1938, 21 U.S.C.A. § 371(f).

[2] Reorganization Plan No. IV, effective June 30, 1940, 5 Fed. Reg. 2421 (1940), 5 U.S.C.A., Note following § 133t.

[3] 5 Fed. Reg. 2543 (1940).

[4] See United States v. Chemical Foundation, Inc., 272 U.S. 1, 14, 15, 47 S. Ct. 1, 71 L.Ed. 131; Philadelphia & Trenton R. R. Co. v. Stimpson, 14 Pet. 448, 458, 10 L.Ed. 535.

has been taken. And, finally, it has facilitated the mechanics of sound and orderly judicial review. Perhaps the time may come when such a judicial precaution will no longer be thought necessary, but the expressions of the Supreme Court down to the present time give us no right to make such a departure in the present case.

In the very recent case of Phelps Dodge Corporation v. National Labor Relations Board, 313 U.S. 177, 197, 61 S.Ct. 845, 853, 85 L.Ed. 1271, 133 A.L.R. 1217, the cause was remanded to the Board on the ground that its order, directing the reinstatement of certain employees who had obtained substantially equivalent employment, did not specifically state that such remedial action was taken to effectuate the policies of the Act. Mr. Justice Frankfurter, speaking for a majority of the Court said: "The administrative process will best be vindicated by clarity in its exercise. Since Congress has defined the authority of the Board and the procedure by which it must be asserted and has charged the federal courts with the duty of reviewing the Board's orders * * *, it will avoid needless litigation and make for effective and expeditious enforcement of the Board's order to require the Board to disclose the basis of its order. We do not intend to enter the province that belongs to the Board, nor do we do so. All we ask of the Board is to give clear indication that it has exercised the discretion with which Congress has empowered it. This is to affirm most emphatically the authority of the Board."

In United States v. Baltimore & Ohio Railroad Co., 293 U.S. 454, 463, 55 S.Ct. 268, 270, 272, 79 L.Ed. 587, where an Act of Congress authorized the Interstate Commerce Commission to prescribe by rule specific devices or changes in equipment, when required to remove "unnecessary peril to life or limb", an order of the Commission which directed the installation of such devices, without any finding that the substitution was required to remove "unnecessary peril to life or limb", was held void. Mr. Justice Brandeis' opinion states: "The power to make the determination whether the proposed device or change is so required, vests in the Commission. But its finding to that effect is essential to the existence of authority to promulgate the rule; and as Congress has made affirmative orders of the Commission subject to judicial review * * * the order may be set aside unless it appears that the basic finding was made."

In United States v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co., 294 U.S. 499, 504, 55 S.Ct. 462, 465, 79 L.Ed. 1023, Mr. Justice Cardozo similarly declared: "This court has held that an order of the Interstate Commerce Commission is void unless supported by findings of the basic or quasi-jurisdictional facts conditioning its power. * * * 'In the absence of such findings, we are not called upon to examine the evidence in order to resolve opposing contentions as to what it shows or to spell out and state such conclusions of fact as it may permit.' Florida v. United States [282 U.S. 194, 215, 51 S.Ct. 119, 75 L.Ed. 291]."

Mr. Chief Justice Hughes also gave recognition to the rule, in Panama Refining Co. v. Ryan, 293 U.S. 388, 432, 55 S.Ct. 241, 253, 79 L.Ed. 446, when he said: "If the citizen is to be punished for the crime of violating a legislative order of an executive officer, or of a board or commission, due process of law requires that it shall appear that the order is within the authority of the officer, board, or commission, and, if that authority depends on determinations of fact, those determinations must be shown."

█ The failure of the order to show that the Administrator's action rested on the foundational basis of the exercise of his judgment that the promulgation of the regulation would promote honesty and fair dealing in the interest of consumers would, under some of the decisions of the Supreme Court referred to above, justify us in declaring the regulation invalid. In the most recent decision of the Court, however, where such a situation has been involved, Phelps Dodge Corporation v. National Labor Relations Board, supra, the need and propriety of a more tolerant and flexible procedure has been recognized, where administrative action relates to the public interest, and not to mere private rights. There the cause was remanded to the National Labor Relations Board, to permit it to disclose what was the actual basis of its action.[5] If official action actually rests upon a proper basis, and the recitations necessary to demonstrate this fact have simply been inadvertently omitted, there is no sound reason why this ought not to be per-

---

[5] A similar practice was followed in A. E. Staley Manufacturing Co. v. Secretary of Agriculture, 7 Cir., 120 F.2d 258, 261.

mitted to be shown. Certainly, judicial responsibility to the public interest, as well as Congressional intent, will be more effectively served in this manner than by unnecessarily delaying administrative action and inviting repetitive litigation. Such a procedure will accordingly be adopted in the present case.

■ Petitioners and interveners seek to have the regulation declared void on other grounds also, but all of these are without merit. Thus it is argued that the definition and standard of identity fixed by the Administrator would be unreasonable because no distinction was made between dried skim milk for human consumption and that used for animal feed. The record shows that the trial examiner or presiding officer, before whom the hearing was held, limited the scope of the hearing, under the published notice, to the question of proper standards for human food only. The Administrator, in denying petitioners' request for a rehearing, declared by letter that the regulation had no application to dried skim milk for animal feed, for which he was not prepared to attempt to prescribe standards. Petitioners applied to this Court, under 21 U.S.C.A. § 371 (f) (2), for leave to adduce additional evidence, upon the question of proper standards for animal feed, which application we denied on the basis of the Administrator's showing in resistance thereto, that the regulation did not cover animal feed and that such evidence would therefore be immaterial. The Administrator necessarily could not be compelled to fix a definition and standard of identity for animal feed use. His specific construction of the regulation for purposes of this judicial review and the court's acceptance thereof would clearly, as a matter of due process, preclude any subsequent attempt on the part of the Administrator, without notice and further hearing under 21 U.S.C.A. § 371(e), to enforce the regulation against animal feed, which petitioners purport to fear.

■ It is further contended that the use of the term "skim milk" is arbitrary and unreasonable, because it tends to create a derogatory impression in the public mind of the quality or food value of the product. The American Dry Milk Institute, which was an association of producers of skim milk powder, had been trying to foster the use in the trade of the designation "dry milk solids not over 1½% fat", and petitioners and interveners asked the Administrator to adopt this term.

The statute required the Administrator, in fixing a definition and standard of identity for a food, to do so "under its common or usual name so far as practicable". What was the common or usual name of the food product here involved, and whether its use in a regulation would be practicable for administrative purposes, were questions for the Administrator, on which we would not be at liberty to disturb his determination, if based upon substantial evidence. Such substantial evidence is contained in the record in this case. The Administrator was not required to hold it impracticable, for regulation purposes, to use what the evidence sufficiently showed to be the common or usual name of a product among ultimate consumers, merely because such a designation might not be as conducive to sales by producers as some term of commercial coinage and glossing. The Administrator's obligation under the statute was simply the promotion of honesty and fair dealing in the interest of consumers. While he would have no right to adopt a designation for the purpose of destroying trade in a legitimate food product, there could ordinarily be no arbitrariness involved in using the common or usual name of such a product for regulation purposes.

■ It is claimed that the adoption of three designations, "dried skim milk", "powdered skim milk", and "skim milk powder", was not a compliance with the provisions of the Act requiring the use of the "common or usual name". The right to employ any or all of the three synonymous common or usual names would appear to be more of an advantage than a detriment to petitioners and interveners. Where several common or usual names for a food product are found to be in general ultimate consumer use, a reasonable construction of the Act does not require that the Administrator be prohibited from adopting more than one term or designation in promulgating an appropriate regulation to promote honesty and fair dealing in the interest of consumers. Nor is such a strict singular construction of the term "common or usual name" required per se, in view of the general congressional declaration in 1 U.S.C.A. § 1, that "In determining the meaning of any Act or resolution of Congress, passed subsequent to February 25, 1871, words importing the singular number may extend and be applied to several persons or things".

■ It is argued also that the Administrator could not legally promulgate a

regulation on the basis of the hearing had and the evidence adduced while the Food and Drugs Administration was under the supervision of the Secretary of Agriculture. No authority is cited in support of this contention. There is no sound reason why a transfer of the powers and duties of the Secretary of Agriculture under the Federal Food, Drug and Cosmetic Act, to the Federal Security Administrator, should have any different legal or administrative effect than an ordinary succession of public officers. It is well settled that a change of personnel in an administrative agency or tribunal during the course of a hearing, or at any time before the issuance of a final order on the hearing, does not invalidate the order. Eastland Co. v. Federal Communications Commission, 67 App.D.C. 316, 92 F.2d 467, 470, certiorari denied 302 U.S. 735, 58 S.Ct. 120, 82 L.Ed. 568; United States v. Reimer, 2 Cir., 83 F.2d 166, 167, 168; State ex rel. American Telechronometer Co. v. Baker, 164 Wash. 483, 2 P.2d 1099, 1105; Cocke v. MacLeod, 85 Cal.App. 63, 258 P. 980, 981, 982.

The contention that the order should be held invalid on the ground that the Administrator did not read the record before the issuance of his order requires only a passing comment. There is no foundation for the contention except supposition, resting upon the fact that only six days intervened between the transfer of the duties of the Secretary of Agriculture to the Federal Security Administrator and the latter's promulgation of the regulation. The order of the Administrator, however, specifically recites that the "findings of fact, on the basis of which a definition and standard of identity is hereinafter fixed and established" have been made "upon consideration of the evidence of record" and "of the Presiding Officer's report and objections thereto." The findings of fact of the Administrator also show some variances from those recommended by the trial examiner or presiding officer. An affirmative recitation of official regularity in an administrative order can hardly be overcome by mere implicational argument.

As indicated above, the cause will be remanded to the Administrator for such finding as he is able and desires to make, as to the basis of his action in promulgating the regulation. Jurisdiction will be retained, so that if no such finding is made within thirty days hereafter, petitioners may apply for an order of final disposition, within ten days following. Respondent may similarly make a showing as to any supplementary finding or order made by him, and final disposition of the proceeding will thereafter be made.

Cause remanded to Federal Security Administrator.