Don GILMORE, Plaintiff,

v.

UNITED STATES of America,
Defendant.

H. J. McCULLOUGH, Administrator of
the Estate of Barbara Briggs Turner
(formerly Barbara Briggs Gilmore),
deceased, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Nos. 31966, 31967.

United States District Court
N. D. California, S. D.

May 31, 1955.

Freed & Freed, San Francisco, Cal.,
for plaintiff.

Lloyd H. Burke, U. S. Atty., San Francisco, Cal., for defendant.

EDWARD P. MURPHY, District Judge.

This is a suit for the recovery of income taxes paid and interest. The commissioner assessed a deficiency which was paid by plaintiff and taxpayer. The commissioner failed to act on a claim for refund and plaintiff elected to sue here.

The assessed deficiency arises out of a finding on May 17, 1946 by the Third Regional Wage Stabilization Board that plaintiff overpaid his employees in the amount of some $145,000 in violation of the Wage Stabilization Act during the taxable years 1942, 1943, 1944 and 1945. The Board determined that $13,-000 of the wage payments would have been approved had Gilmore previously applied. They also determined that in view of extenuating circumstances, "the pressure of the times" and that the payments were made to retain desired employees, of the remaining $132,000 overpayment, only some $31,000 would be disregarded for the purpose of calculating plaintiff's deductions for purposes of the Internal Revenue Code. This was approved by the National Wage Stabilization Board on August 29, 1946.

Plaintiff contends that the hearing before the Board was unfair—it violated due process and asserts that such a hear-

ing cannot therefore be the basis of any deficiency. The government argues that the proper time to review the Board's determination has long since passed; that judicial review was available after the Board's decision and that the delay in seeking judicial review constitutes laches.

The government objected to the introduction of the transcript of the Board hearing on the ground that review of that proceeding could not now be had. I reserved ruling at that time pending briefs by both counsel.

The problems of present reviewability of the administrative proceedings are difficult and very real. Although this question needs solving, its solution must wait until a case arises which requires it. I have reviewed the record of the Board hearing with great care and conclude that within the limits of judicial review of administrative hearings it was substantially fair and that findings are supported by substantial evidence. Whether the government is right in asserting that this method of seeking review comes too late I need not decide to dispose of this case.

 Plaintiff contends that the composition of the Board was prejudicial to his rights and was not as provided by law. The President, pursuant to his delegated authority in the Stabilization Act of 1942, 50 U.S.C.Appendix, § 961 et seq. (1946 ed.) set up procedures for enforcement of the Act. 29 C.F.R. sec. 802.70 (Supp.1946). That regulation provided for hearings before "Enforcement Divisions" of the Regional Board and provided:

"That in any particular case of alleged violations of the act, any hearing shall be held before, and findings and determination made by not less than three nor more than six members of the Enforcement Division, consisting of equal representation of employers, employees and the public with a public member acting as Chairman".

The panel as originally constituted was composed of one public member as chairman, two industry members and two labor members. There was no objection to a single public member. During the course of the hearing, one of the industry members withdrew, and the remaining members continued to hear the case. The plaintiff strongly objected to this procedure. The findings and determination were made by one public member, one labor member and one industry member. Plaintiff asserts that this vitiates the proceedings.

There are many cases in which the personnel of administrative boards has changed during the course of the hearing. If the new member concedes the previous evidence, the change in membership has uniformly not invalidated the hearing. Eastland Co. v. Federal Communications Comm., 1937, 67 App. D.C. 316, 92 F.2d 467; Sisto v. Civil Aeronautics Board, 1949, 86 U.S.App.D.C. 31, 179 F.2d 47; Bowles v. Indianapolis Railways, Inc., D.C.S.D.Ind.1946, 64 F.Supp. 865; See Twin Cities Milk Producers Ass'n v. McNutt, 8 Cir., 1941, 122 F.2d 564. It is only fair to say that none of these cases involved a tripartite board.

The essence of due process requirements regarding membership on administrative boards is that "all the essentials of a fair hearing are observed *by the board exercising ultimate judgment.*" United States ex rel. Minuto v. Reimer, 2 Cir., 1936, 83 F.2d 166, 167. Those who decide must hear or receive the evidence. Morgan v. U. S., 1936, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288.

The essentials were met here. The board which decided, those who made the findings and the determination, heard the evidence and were the tripartite representation set up in the regulation. There was no denial of due process.

 An anonymous letter to the Regional Attorney for the Board which stated that Don Gilmore was violating the Wage Stabilization Act and asked that the matter be given attention and that "this unAmerican practice be discontinued", was admitted in evidence at the hearing. Hearsay statements from

certain of Gilmore's employees were admitted. Plaintiff's counsel objected to both at the hearing. He now contends that their admissibility denied him a fair hearing.

The admission of hearsay evidence in administrative hearings has been often tested in the courts. This circuit court in discussing the problem under the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., has said:

"The common law exclusionary rules of evidence are not based in Constitutional interdictions and are not applicable to administrative proceedings, even of judicial character, in the absence of statutory requirement.

" * * * The receipt of irrelevant, immaterial and hearsay evidence is no cause for reversal of an administrative order though the validity of the order can never rest upon conjecture, guess or chance.

"However, both the Food and Drug Act [21 U.S.C.A. § 301 et seq.] and the Administrative Procedure Act enjoin in effect that the findings are to be in accord with the substantial evidence and in that posture are conclusive upon the reviewing tribunal. This is but a restatement of the general rule of judicial review applied by appellate tribunals to the findings of fact of lower courts. The requirement that the administrative findings accord with the substantial evidence does not forbid administrative utilitization of probative hearsay in making such findings.

" * * * However, since 'substantial evidence' includes more than 'uncorroborated hearsay' and 'more than a mere scintilla' the findings, to be valid, cannot be based upon hearsay alone, nor upon hearsay corroborated by a mere scintilla. Founded upon these requirements, the test whether evidence is 'substantial,' is whether, in the individual case before the court, there is

'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' ". Willapoint Oysters v. Ewing, 9 Cir., 1949, 174 F.2d 676, 690, 691.

The problem is not whether hearsay was admitted but rather whether the evidence is sufficient to support the finding.

Very briefly—the practice condemned here was the systematic late punching of employees' time cards to give credit for overtime not performed. Gilmore's defense was that this same practice existed prior to the "freeze date"—that men were paid a bonus for completing a certain job in shorter than a standard time in the form of overtime. The hearsay evidence went to refute this.

There was substantial evidence before the Board which without the hearsay would have supported the Board's findings. The records of the Gilmore Company showed that the condemned practice was not the same practice the plaintiff asserted occurred before the freeze date. The time cards prior to that date showed irregular overtime payments. The payroll journal sheet showed that on April 26, 1944, a change in overtime payments was made. After this the time cards for all metal men were punched out at the same time (within the limits of the time it takes to physically punch them). The payroll records prior to the freeze date did not demonstrate any bonus overtime payment. Gilmore was a party to a contract with the Union which prohibited bonus payments.

This summary is not meant to be exhaustive. I have carefully read all of the record of the hearing and am of the firm conviction that the evidence shows that Gilmore violated the Act.

Although I have not made computations regarding the exact figures, it is quite clear that the final disposition by the Board in penalizing him only one quarter of the total violation was lenient.

The anonymous letter should not have been admitted but did not destroy the essential fairness of the hearing. It is

apparent that the Board gave consideration to Gilmore's labor problems in not including the total violation in its determination.

Finally, plaintiff contends that this disallowance is unconstitutional as a tax upon capital. This is without merit. Weather-Seal Mfg. Co. v. Commissioner, 1951, 16 T.C. 1312, affirmed, 6 Cir., 1952, 199 F.2d 376.

Judgment will be entered for the defendant. Let findings of fact and conclusions of law and a draft of the judgment be prepared and submitted in accordance with the local rule.