VISCEGLIA et al. v. UNITED STATES et al. (INTERSTATE HOUSEHOLD MOVERS TARIFF BUREAU, Inc., et al., Interveners).

District Court, S. D. New York.
June 10, 1938.

356

Abraham Rotwein, of New York City (Allan Hyman, of New York City, of counsel), for plaintiffs.

Lamar Hardy, U. S. Atty., of New York City (Elmer B. Collins, of Washington, D. C., of counsel), for the United States.

Daniel W. Knowlton, of Washington, D. C. (Thomas M. Ross and Nelson Thomas, both of Washington, D. C., of counsel), for Interstate Commerce Commission.

J. Almyk Lieberman, of New York City, for intervener Interstate Household Movers Tariff Bureau, Inc.

Before AUGUSTUS N. HAND, Circuit Judge, and BONDY and WOOLSEY, District Judges.

AUGUSTUS N. HAND, Circuit Judge.

The proceedings before the Commission were instituted on or about February 7, 1936, by Frank Visceglia and Connie Putignano for certificates to operate as carriers in interstate commerce, and by Frank Visceglia for a license to operate as a broker of transportation, by motor vehicle. Under date of December 2, 1937, the Commission made a report reciting facts and preliminary findings in which it determined that the applicants in MC 49177 and MC 49178 were not operating as common carriers on June 1, 1935, or as contract carriers on July 1, 1935, and continuously thereafter; and that the applicant for a broker's license in MC 45400 had not shown that he was fit, willing and able properly to perform the brokerage operations applied for or that the continuance of such operations was consistent with the public interest. On December 2, 1937, the Commission also made an order denying the applications and directing that the applicants "cease and desist on or before January 13, 1938, from all operations as common carriers by motor vehicle, contract carriers by motor vehicle, or brokers for which certificates of public convenience and necessity, permits or licenses are required by the provisions of the Motor Carrier Act, 1935". Thereupon the applicants brought this suit pursuant to U.S.Code, Title 28, Section 41, Subdivision 28, 28 U.S.C.A. § 41(28), to have the order of the Commission annulled. The bill of complaint alleged that the Commission in its determination and order acted arbitrarily and in excess of its powers. Answers were filed by the Commission and the United States.

The plaintiffs moved to have the operation of the order of the Interstate Commerce Commission suspended pendente lite. We reserved decision and proceeded to a final hearing on the merits. At the hearing we granted a motion by Interstate Household Movers Tariff Bureau Inc., New Jersey Furniture Warehousemen Association and United Van Lines of Ohio for leave to intervene and also granted a motion by the Commission to quash a subpoena duces tecum issued to the Secretary of the Commission which ordered him to produce the original transcript and all the exhibits that were offered in evidence in the proceeding before the Commission. After the quashing of the subpoena the plaintiffs elected to proceed with the suit solely upon the findings and report of the Commission without producing a certified copy of the evidence on which the report was made.

After hearing argument and considering briefs submitted on behalf of the plaintiffs and defendants we have reached the conclusion that the motion for a preliminary

injunction should be denied and the bill of complaint dismissed.

The applicants before the Commission sought certificates under Section 206 and permits under Section 209 of the Motor Carrier Act (Interstate Commerce Act, Part 2), 49 U.S.C.A. §§ 306, 309, authorizing them to operate as motor carriers of specified classes of goods over regular and irregular routes, and Frank Visceglia sought a license under Section 211, 49 U. S.C.A. § 311, to operate a brokerage service covering such transportation. After a hearing, including presentation of evidence before an Examiner of the Commission, service of a proposed report, filing of exceptions thereto and oral argument before Division 5 of the Commission, the order previously referred to was issued.

Section 206 of the Motor Carrier Act forbids any common carrier by motor vehicle from engaging in interstate operations "unless there is in force with respect to such carrier a certificate of public convenience and necessity issued by the Commission authorizing such operations", but provides that if a carrier or predecessor in interest was in bona fide operation on June 1, 1935, over the route or routes or within the territory for which application is made, and has so operated since that time, and if application for such certificate shall be made within one hundred and twenty days after the effective date of the act, the Commission shall issue such certificate without further proof that public convenience and necessity will be served by such operation. It is further provided that pending the determination of any such application continuance of operation shall be lawful.

Section 209 provides in similar terms for the granting of a "permit" to a contract carrier by motor vehicle in interstate commerce who was in bona fide operation as such on July 1, 1935, and has so operated since that time.

Section 211 provides that no person shall, for compensation, sell or offer for sale transportation by motor vehicle, or contract or arrange for such transportation, or hold himself out as one who sells or arranges for such transportation unless such person holds a broker's license issued by the Commission to engage in such transportation. It provides that such a license shall be issued to any qualified applicant therefor "if it is found that the applicant is fit, willing, and able properly to perform the service proposed and to conform to the provisions of this part [chapter] and the requirements, rules, and regulations of the Commission thereunder, and that the proposed service, * * * is, or will be consistent with the public interest and the policy declared in section 302 (a) of this part [chapter]; otherwise such application shall be denied".

The evidence taken before the Commission was not made a part of the record so that the power of this court to enjoin, set aside, annul or suspend, in whole or in part, the order of the Commission can only exist if the findings of fact in the report of the Commission fail to give rational support to its conclusions of law. Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 286, 54 S.Ct. 692, 693, 78 L.Ed. 1260. In other words, our review is limited to determining whether the report supports the "cease and desist" order.

The report of the Commission met the requirements of Section 14(1) of the Interstate Commerce Act, 49 U.S.C.A. § 14(1), made applicable by Section 204(f) of the Motor Carrier Act, 49 U.S.C.A. § 304(f). In other words, it stated "the conclusions of the Commission, together with its decision, order, or requirement in the premises; * * *". It was not necessary to make "formal and precise findings" in a case of this type and to set out all the primary evidence that was considered, but only findings "basic or essential". United States v. Baltimore & O. R. Co., 293 U.S. 454, 464, 465, 55 S.Ct. 268, 272, 273, 79 L. Ed. 587; United States v. Louisiana, 290 U.S. 70, 80, 54 S.Ct. 28, 33, 78 L.Ed. 181; Manufacturers' Ry. Co. v. United States, 246 U.S. 457, 487, 38 S.Ct. 383, 62 L.Ed. 831.

The plaintiffs' applications sought certificates and permits under the so-called "grandfather" clause of the Motor Carrier Act of 1935 which went into effect on August 9th of that year. To obtain them without proof of public convenience and necessity they had to establish that they were continuously engaged as common or contract carriers during the times designated in the statute. Their counsel argues that from an analysis of the different recitals of facts in the report of the Commission the plaintiffs, who were at times operating individually before the critical statutory dates of June 1 and July 1, 1935, and were likewise operating after October 14, 1935, when receivers of United Van Service were appoint-

ed, should be regarded as operating individually during the interval. While some of the facts recited, if taken alone, are not inconsistent with such an inference, other facts recited and the basic findings lead to an opposite conclusion. Under such circumstances, it would be quite improper for us to reverse the findings of fact of the Commission, especially when the evidence before it is not available to us.

The report states that about January 25, 1933, K & E DeLuxe Padded Van Company Incorporated, and in September, 1934, United Van Service were organized under the laws of New Jersey and that they were operating the business prior to and during the interval between June 1, 1935, and October 14, 1935, when they were placed in the hands of a receiver by the New Jersey Court of Chancery. The corporations were found to have been owned by the plaintiffs and their near relatives who were officers and stockholders. After the receivership the business appears to have been operated by Frank Visceglia.

The findings in respect to plaintiffs' application for certificates and permits to operate as carriers by motor vehicle in interstate commerce and in respect to the application of Frank Visceglia for a brokerage license in our opinion preclude the claims asserted in the present suit and support the order of the Commission.

In passing upon the several applications the report of the Commission stated that the expenses of the New York Office prior to "June 1, 1935, including rent, telephone, telegraph and advertising bills, and employees salaries, were paid by checks drawn on the account of United Van Service, the New Jersey Corporation," and that the checks were printed on a form headed United Van Service, 1775 Broadway, N. Y., followed by "Main Office, 79 Kearney Street, Jersey City, N. J.", and were signed by Joseph Visceglia (who was the husband of Connie Putignano) as president prior to March 22, 1935, and as general manager thereafter. Joseph Visceglia testified that Frank Visceglia had repaid to the corporation all moneys expended in his behalf, but the books of the United Van Service were found in the report not to reflect such payments. The report went on to state that checks of the United Van Service drawn on the Claremont Branch of the Trust Company of New Jersey, Jersey City, during the period December 29, 1934, to May 28, 1935, were drawn in Jersey City and signed by Joseph Visceglia as president prior to March 8, 1935, and as manager after March 22, 1935.

The report then stated the following:

"Prior to October 14, 1935, Frank Visceglia had no stationery or contracts which indicated that he as an individual was operating as a common carrier or broker under his own name or under the names of United Van Service, Ace United Van Service, or New York United Van Service. The stationery and shipping contracts used at the office of United Van Service at 1775 Broadway, New York City, were the same as those used at the office at 79 Kearney Street, Jersey City, which is admitted to have been the executive office of United Van Service, the New Jersey corporation. There is nothing in the record to show that Frank Visceglia prior to October 14, 1935, had a bank account in his own name to which he deposited receipts from the operations which he claims to have conducted or from which he paid the expenses of these operations, that he maintained a set of books of account separate from those of the New Jersey corporations, or that he, as an individual, issued a bill of lading or entered into a contract for the transportation of household goods, either in his own name, under the name of United Van Service, Ace United Van Service, or New York United Van Service.

"Since October 14, 1935, common carrier and broker operations have been carried on under the name of United Van Service, presumably by Frank Visceglia as an individual. However, the record is convincing that prior to that date all operations upon which Frank Visceglia relies for the issuance of authority to him under the 'grandfather' clause were those of United Van Service, the New Jersey corporation. As it has not been shown that Frank Visceglia was operating as a common carrier by motor vehicle on June 1, 1935, or a contract carrier by motor vehicle on July 1, 1935, and continuously since, his application in no. MC–49177 must be denied.

"As previously stated, brokerage operations have been and are being conducted under the name United Van Service at New York, Jersey City, and other points. The extent of these brokerage operations was not shown, nor has it been shown that the continuance of these operations is consistent with the public interest or the policy declared in section 202(a) of the act, 49 U.S. C.A. § 302(a). In addition, Frank Visceglia has not shown that he is fit, willing, and able properly to perform such operations and

to conform to the provisions of the act. Therefore, the application in no. MC–45400 must be denied.

"The testimony and evidence on behalf of the application in no. MC–49178, in which Connie Putignano, doing business as All American Van Service, seeks a certificate under the 'grandfather' clause, is similar to that offered in no. MC–49177 on behalf of Frank Visceglia. Joseph Visceglia testified as Connie Putignano's general manager to the effect that she has been engaged in motor-carrier operations since May 23, 1934, the date the certificate that she was doing business as All American Van Service was filed, and that she solicited traffic and made contracts for the transportation of household goods in interstate commerce.

"A number of contracts for the movement of household goods are relied upon by applicant to prove bona fide operation as a common carrier on June 1, 1935, and continuously since. The contracts which were executed prior to July 1936 are on United Van Service forms and signed on behalf of United Van Service by the same employees of the New York office who signed contracts submitted in support of Frank Visceglia's applications. There is nothing on these contracts to indicate that the transportation was performed by Connie Putignano, doing business as All-American Van Service. There were also submitted a number of contracts for the transportation of household goods, signed in July 1936 and later months on forms of All-American Van Service, but the shipments were also covered by United Van Service contracts or United Van Service bills of lading. On the record before us, applicant, Connie Putignano, has not established that she operated as a common carrier by motor vehicle on June 1, 1935, and continuously since.

"We find that applicants in nos. * * *, MC–49177, MC–49178, * * * have failed to establish the right to certificates to operate as common carriers by motor vehicle or permits to operate as contract carriers by motor vehicle under the 'grandfather' clauses of the act.

"We further find that applicant in no. MC–45400 has failed to establish that he is fit, willing, and able to properly perform the proposed brokerage service and to conform to the provisions of the act and our requirements, rules, and regulations thereunder, or that such service will be consistent with the public interest and the policy declared in section 202(a) of the act."

The plaintiffs contend that the Commission acted unfairly and arbitrarily because three Commissioners, namely, Lee, Caskie and Eastman, heard the oral argument on the exceptions to the Examiner's report, while Commissioners Lee, Eastman and Rogers rendered the decision—Rogers having been substituted for Caskie. In our opinion, this procedure did not invalidate the order of the Commission. By Section 17(2) of the Interstate Commerce Act, 49 U.S.C.A. § 17(2), made applicable to the Motor Carrier Act by Section 205 (i) thereof, 49 U.S.C.A. § 305(i), the Commission may divide its members "into as many divisions (each to consist of not less than three members) as it may deem necessary, which may be changed from time to time." Any Commissioner may be assigned to one or more divisions, and in the absence or inability of any Commissioner to serve thereon the chairman may designate any other Commissioner to "temporarily serve on said division until the Commission shall otherwise order". By Section 17(4), 49 U.S.C.A. § 17(4), "each division * * * shall have power and authority by a majority thereof to hear and determine, order, certify, report, or otherwise act" as to any matters referred to it for action by the Commission and in respect thereof shall have all the authority of the Commission. As a majority of Division 5 both heard the argument and participated in the decision we hold that the action of the division was valid. Cf. Eastland Co. v. Federal Communications Commission, 67 App.D.C. 316, 92 F.2d 467, certiorari denied 302 U.S. 735, 58 S.Ct. 120, 82 L.Ed. ——.

The plaintiffs' protest against the denial of their petition for a rehearing before the full Commission is without merit. Under the express terms of Section 204(e) of the Motor Carrier Act, 49 U.S.C.A. § 304 (e), the granting of such an application is a matter of discretion. Likewise their contention that the denial of the applications under the "grandfather" clause was an invasion of their constitutional rights cannot prevail. Applicants had no vested right to use public highways to carry on a business as carriers in interstate commerce without obtaining the certificate or permit required by the act. Cf. Buck v. Kuykendall, 267 U. S. 307, 45 S.Ct. 324, 69 L.Ed. 623, 38 A.L.R. 286; Packard v. Banton, 264 U.S. 140, 44 S.Ct. 257, 68 L.Ed. 596. But by their application they were here seeking a privilege only under the "grandfather" clause which, if denied, involved no deprivation of their

right to apply for certificates and permits under Sections 207 and 209(b) of the Act, 49 U.S.C.A. §§ 307, 309(b), and to obtain ·them if they are able to satisfy the Commission that public convenience and necessity will thereby be served and that they are fit to operate in interstate commerce by motor vehicle.

We hold that the order of the Commission was supported by its findings and accordingly direct that the motion for an injunction pendente lite be denied and that the bill be dismissed.

Submit proposed findings within ten days. These are only for the guidance of the court, but are not to be made part of the record.