120 F.Supp. 354 (1954)
McGRAW ELECTRIC CO. et al.
v.
UNITED STATES et al.
Civ. No. 7973.
United States District Court, E. D. Missouri, E. D.
March 19, 1954.
*355 *356 Arthur J. Freund, St. Louis, Mo., for plaintiffs.
H. G. Morison, Asst. Atty. Gen., Robert W. Strange and James E. Kilday, Special Assts. to Atty. Gen., of Washington, D. C., and George L. Robertson, U. S. Atty., St. Louis, Mo., for defendant.
Edward M. Reidy, Chief Counsel, and Samuel R. Howell, Asst. Chief Counsel, Washington, D. C., for intervening defendant, Interstate Commerce Commission.
Edward R. Gustafson and Leo P. Day, Chicago, Illinois, and Richmond C. Coburn, St. Louis, Mo., for intervening defendant Railroads.
Before THOMAS, Circuit Judge, MOORE and HARPER, District Judges.
MOORE, Judge.
This is an action under Sections 1336, 1398, 2284 and 2321 through 2325, 28 U.S.C.A., to enjoin, set aside, annul and suspend certain orders of the Interstate Commerce Commission (1) dismissing a complaint seeking the prescription of lawful rates for the future and reparations from defendant railroads on shipment of electrical fuses, and (2) discontinuing suspension of a new tariff schedule affecting the same commodities. The two proceedings were consolidated before the Commission by agreement of the parties.
We are met at the outset with plaintiffs' motion for judgment on the pleadings or for summary judgment, which was consolidated before us with the hearing on the merits. This motion is on the ground that the plaintiffs had not been accorded a full and fair hearing before the Commission. This matter requires a somewhat detailed recital of the procedure in this case before the Commission. The shortened procedure was used, whereby no oral evidence was heard, but affidavits and exhibits were submitted. The parties filed their exceptions to the proposed report of the examiner, and requested oral argument before Division No. 3 of the Commission (consisting of three members). The request for oral argument was granted. *357 and on the appointed day was heard by Commissioners Miller and Cross, after announcement that Commissioner Johnson was unavoidably absent, but would read the transcript of the argument, and would participate in the decision on the case. While the case was under submission, Commissioner Miller died, and the parties were notified that Commissioner Patterson had been appointed to take his place on Division No. 3, and that the case had been re-submitted for decision by the Division so constituted. About ten days later the Report and Opinion of Division No. 3 was announced, with a dissent, in part, by Commissioner Cross, the only member who had heard the oral argument. The plaintiffs filed original and supplemental petitions for rehearing and re-argument, which raised these matters, and both were denied by the full Commission without argument.
The defendants argue that the point is not properly raised in this court because plaintiffs failed to object to the hearing before the two commissioners, and further failed to object to the resubmission to the newly constituted division after receipt of the notice mentioned above. However, these matters were raised in the petitions for rehearing and reargument before the Commission, and in view of the relatively short period of time before the announcement of its decision by the Division as reconstituted, we will assume that these matters were sufficiently raised during the administrative proceedings.
Section 17(1) of the Interstate Commerce Act, 49 U.S.C.A. § 17(1), provides that the Commission may divide its members "into as many divisions (each to consist of not less than three members) as it may deem necessary * * * When a vacancy occurs in any division or when a Commissioner because of absence, or other cause, is unable to serve thereon, the Chairman of the Commission or any Commissioner designated by him for that purpose may serve temporarily on such division until the Commission otherwise orders." Section 17 (3) provides that "The Commission shall conduct its proceedings under any provision of law in such manner as will best conduce to the proper dispatch of business and to the ends of justice. * * * A majority of the Commission, of a division, or of a board shall constitute a quorum for the transaction of business. * * *" Under Section 17 (4) "a division * * * shall have authority to hear and determine * * * or otherwise act as to any work, business, or functions assigned or referred thereto * * * and * * * shall have all the jurisdiction and powers conferred by law upon the Commission, and be subject to the same duties and obligations."
It is to be noted that no objection was made at the oral argument to the announcement that one of the three members of the Division was absent. Plaintiffs do not now complain of this because under the statute a quorum was present, and if the majority which heard the argument had decided the case they would have no complaint. See Visceglia v. United States, D.C., 24 F.Supp. 355, where the substitution of one member after argument before a Division consisting of three members was held not to invalidate the action of the Commission.
Plaintiffs' complaint here is that the majority which rendered the decision had not heard the oral argument, and the one member who had heard argument dissented in part.
This situation is similar in some respects to that in Eastland Co. v. Federal Communications Commission, 67 App. D.C. 316, 92 F.2d 467, certiorari denied 302 U.S. 735, 58 S.Ct. 120, 82 L.Ed. 568, where a Division of three commissioners heard the evidence and argument, but the decision was later rendered by the Division with the substitution of two members who had not heard the case  one member had died and the other had been transferred to another Division. *358 The Court said, 92 F.2d at pages 469-470:
"No question is raised by the appellants as to lack of notice, or opportunity to present evidence and file briefs or as to the manner in which the hearing itself was conducted. The appellants were accorded ample and timely notice and a full opportunity to be heard. The commissioners who entered the decision report that they had fully considered the evidence and the entire record of the case.
"The contention of appellants is that they were entitled to have their case passed upon by the identical members of the Broadcasting Division who sat at the presentation of all of the evidence in the case, and that the procedure followed amounted to a denial of a lawful hearing and trial of the case, inasmuch as two members who joined in the decision did not hear the oral evidence when delivered by the witnesses in person.
"In our opinion the partial change in the personnel of the Division which decided the case did not invalidate its decision, for it was nevertheless the decision of the Division which acted upon the evidence."
The Court relied upon the statutes, which are substantially similar to those concerning the Interstate Commerce Commission quoted supra, but the Court goes on to point out the fact that no motion for rehearing was made before the Division or Commission, as was done here.
However, we believe that a full and fair hearing was granted in this case. A majority of the Division as then constituted heard the oral argument after notice to the parties that the third member was unavoidably absent and would read the transcript of the oral argument and participate in the decision on the case. This he did, and also had all of the purely documentary evidence and written memoranda before him. Commissioner Patterson, who was substituted for Commissioner Miller, also had all of this material before him.
It is to be noted that the parties waived their right to present oral testimony and to cross-examine their adversaries' witnesses by consenting to the "shortened procedure" under the Commission's rules. Oral argument, under Rule 98 of the Commission's General Rules of Practice, 49 U.S.C.A.Appendix, is not granted as a matter of right but is discretionary with the Commission.
The Administrative Procedure Act, 5 U.S.C.A. §§ 1004, 1006 and 1007, does not provide the circumstances under which oral argument shall be granted, nor who shall preside at such argument. See National Labor Relations Board v. Stocker Mfg. Co., 3 Cir., 185 F.2d 451.
Due process of law under the Fifth Amendment does not necessarily require that oral argument be granted. In Federal Communications Commission v. WJR, The Goodwill Station, 337 U.S. 265 at page 275, 69 S.Ct. 1097 at page 1103, 93 L.Ed. 1353, the Court said:
"On the contrary, due process of law has never been a term of fixed and invariable content. This is as true with reference to oral argument as with respect to other elements of procedural due process. For this Court has held in some situations that such argument is essential to a fair hearing, Londoner v. City & County of Denver, 210 U.S. 373, 28 S.Ct. 708, 52 L.Ed. 1103, in others that argument submitted in writing is sufficient, Morgan v. United States, 298 U.S. 468, 481, 56 S.Ct. 906, 911, 80 L.Ed. 1288. See also Johnson & Wimsatt v. Hazen, 69 App.D.C. 151, 99 F.2d 384; Mitchell v. Reichelderfer, 61 App.D.C. 50, 57 F.2d 416."
See, also, Sisto v. Civil Aeronautics Board, 86 U.S.App.D.C. 31, 179 F.2d 47.
As no statute or rule demands it, and procedural due process does not necessarily require it, we hold that the hearing *359 granted in this case was reasonable and adequate where all the evidence was in documentary form, and the oral argument in written form was before all the members of the Division who decided the case.
On the merits, this controversy involves ratings on electrical fuses. These are of three principal types: the screw-in fuse; the cartridge type fuse and the knife blade fuse. Under tariff schedules for Official Territory, there are two classifications into which fuses may fall: "Item 15890 Electric * * * fuse plugs, in barrels or boxes"; and "Item 15965 Fuses, noibn[1], in barrels or boxes".
The screw-in type fuse falls into the "fuse plug" classification, and in less than carload shipments takes a rating of Class 2, but by virtue of a classification exception rating takes a rating of Column 70, or 70% of First Class. The cartridge and knife blade types have been placed into the "fuses, noibn" classification, and in less than carload shipments take a first class rating, and have no exception rating. There is also a Column 70 rating on less than carload shipments of certain electrical appliances and parts thereof, including "circuit breakers * * * cut-outs * * * controllers or parts * * * motors or parts * * * switches and parts".
The shippers contended that the rates charged on the cartridge and knife blade fuses were, are and for the future will be unreasonable, unjustly discriminatory, and inapplicable, in violation of Sections 1, 2 and 6 of the Interstate Commerce Act, 49 U.S.C.A. §§ 1, 2, 6.
The Commission dismissed the Complaint and vacated the suspension order on the new tariff which amended the description in Item 15890 from "fuse plugs" to "screw shell type fuse plugs".
The plaintiffs claim, first, that the ratings applied to their knife-blade and cartridge type fuses are inapplicable because they should properly fall within the exceptions tariff relating to certain electrical appliances or parts mentioned above. Plaintiffs contend that the construction of the rate tariffs is purely a question of law for determination by this Court and that all ambiguities or reasonable doubts as to their meaning must be resolved against the Railroad Carriers.
In this connection it is asserted that the cartridge and knife-blade types are obviously "fuse plugs" because they are "plugged" into receptacles and that they are obviously both "circuit breakers" and "cutouts" under the other exceptions tariff. The short answer to this is that the plaintiffs made no such contentions before the Commission and should not be heard to make them for the first time before this Court. General Transp. Co. v. United States, D.C., 65 F. Supp. 981, 984. Actually, the contentions are not even made in the pleadings in this Court, but are raised for the first time in the briefs. Furthermore, there is evidence placed in the record by plaintiffs that the terms are not used synonymously commercially, or in the electrical industry, but describe different types of circuit-interrupting devices.
The plaintiffs did contend before the Commission that the designation of "fuse plugs" was confusing as to whether it embraced the term "plug fuse". They also contended strenuously that the cartridge and knife-blade fuses were embraced within the terms "parts" of the electrical appliances mentioned above.
The Commission found on substantial evidence that the terms "plug fuse" and "fuse plug" are used synonymously in the electrical business to describe a fuse which is screwed into a receptacle in the manner of an electric bulb. It further found that size or composition of the base makes no difference in the description; that substitution of "screw shell type fuse plugs" for "fuse plugs" would cover the Type S fuse, which has a smaller *360 base; and that the schedules under suspension, therefore, would be just and reasonable.
On the question of fuses as "parts" of electrical appliances, the Commission found:
"There is nothing peculiar in the construction or use of a fuse to take it out of its own category and place it with parts of electrical appliances. It must be admitted, of course, that a fuse may be considered to be part of an electrical appliance when shipped with, and as a part of, the appliance. However, that is not the case here. These complainants manufacture fuses and ship them in quantity as fuses. There is no showing that the fuses are shipped with, or as parts of, any electrical appliances or machinery. Similarly, there is no showing that they are manufactured to specifications for use with any particular appliance or machine.
"It is apparent that these fuses are manufactured to serve a particular purpose, i. e., the protection of the circuit, the machinery or appliance, or both. As the exception item covering electrical appliances and parts does not embrace fuses, it follows that the ratings sought are not applicable thereon."
We believe that the determination of the applicable tariffs in this case is a question of law inextricably mingled with questions of fact. The determination of whether fuses are "parts" of the electrical appliances involves determination of fact, namely, the meaning of the tariff term "fuses" in ordinary industrial and commercial usage, and what is comprehended in the term "parts" of the electrical appliances. The evidence was conflicting on these issues, but our function as the reviewing Court is limited to a determination of whether the Commission's findings are supported by substantial evidence. We believe the findings are supported by substantial evidence and, therefore, cannot be upset. As was stated in Old Colony Furniture Co. v. United States, D.C., 95 F. Supp. 507 at page 510:
"It is true that it has been frequently said that the construction of a railroad freight tariff, like that of any other document, is a question of law. But at times, as is the case here, the question of law is inextricably mingled with questions of fact. Here, as petitioners themselves contend, the words of the tariff must be given the sense which they would convey to the shipper who reads it. But this in turn requires findings of fact as to the meanings which these words have in industrial usage. Cf. Great Northern Railway Co. v. Merchants' Elevator Co., supra [259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943]. These latter findings of the Commission, being supported by substantial evidence, cannot be upset. In the light of these findings, the Commission's ruling as to which item of the tariff is applicable is correct."
That case involved the question whether paint on wooden auto parts was a "preservative" or a "protective coating" under the tariffs. See, also, Texas & P. R. Co. v. American Tie & Timber Co., 234 U.S. 138, 34 S.Ct. 885, 58 L.Ed. 1255, where the question involved whether oak cross-ties were "lumber" within the meaning of the tariff.
The plaintiffs charge that the Commission erred as a matter of law in finding that "No proof was offered in support of the allegation of unjust discrimination, which will not be further considered". It was explained in a footnote:
"Section 2 is intended to enforce equality between shippers, and it prohibits any rebate or other device by which two shippers, shipping over the same line, the same distance, under the same circumstances of carriage, are compelled to pay different freight charges therefor. See Wight v. United States, 167 U. S. 512, 17 S.Ct. 822, 42 L.Ed. 258."
*361 The burden of plaintiffs' contention is, apparently, that all types of fuses are "a like kind of traffic" under Section 2 of the Act, and should, therefore, come under the same classification rating. But Section 2 is not applicable in such a situation, for the reason that Section 2 was intended to enforce equality between shippers. Wight v. United States, supra, and see, also, L. T. Barringer & Co. v. United States, 319 U.S. 1 at page 6, 63 S.Ct. 967, 87 L.Ed. 1171. The finding of the Commission that no proof was offered as to preferences for other shippers is supported by the record.
We now turn to the allegation that the rating of first-class on "fuses, noibn" on shipments in less than carload lots is unreasonable under Section 1 of the Act.
The Commission found that the applicable ratings on "fuses, noibn" were not shown to have been or to be unreasonable, and based this conclusion on a number of subsidiary findings. They found that there was no proof that the rates were unreasonable per se, and that the attack was directed to the proposition that the commodity had been improperly rated in the classification, which was unreasonable to the extent that it exceeds the Column 70 exception rating on fuse plugs and electrical appliances and parts; that the weights and values of the different types of fuses varied considerably; that, for example, plaintiff McGraw's fuses, noibn, ranged in weight from 49 to 62 pounds a cubic foot, and in value from 76 cents to $2 a pound, as compared with a density of 53.5 pounds a cubic foot and a value of 37 cents a pound for shipments of fuse plugs by the same company; that the Commission previously found first-class rates not unreasonable on commodities having lower values per pound than such "fuses, noibn" and similar weight densities; that motor truck competition was the motivating force in compelling the establishment in 1940 of the exceptions ratings; and that the first-class rating on fuses, noibn, had been in effect since 1930 without complaint from shippers, thus importing general satisfaction with the existing rates.
These findings and conclusions on the question of reasonableness are a matter peculiarly within the province of the Commission. The function of this Court is a limited one. It is to determine if there is in the record any rational basis for what the Commission has done. If there is, the judicial function is exhausted, and the order of the Commission must stand. Rochester Tel. Corp. v. United States, 307 U.S. 125, 146, 59 S.Ct. 754, 83 L.Ed. 1147. It was said in the Rochester case, 307 U.S. at p. 140, 59 S.Ct. at page 762:
"Only questions affecting constitutional power, statutory authority and the basic requirements of proof may be raised."
The plaintiffs contend that the Commission ignored essential elements in the determination of the rating, failed to consider some of the evidence, and placed undue reliance on the questions of value and the existence of the rating for a long period.
It is alleged that the Commission ignored the fact the Column 70 exception rating is used in Southern, Western and Western Trunk Line Territories on "fuses, noibn" and from points in Official Territory to destinations in those Territories. However, this fact is mentioned in the report of the Commission. The contention is that the Commission failed to follow its own principles as established in the Class Rate Investigation, 1939, 262 I.C.C. 447, that uniformity of rates was highly desirable as between Territories.
However, it was also held in that case that the rulings on uniformity between territories were not intended to prevent exceptional classifications where required by either the Commerce Act or for commercial or competitive reasons. Since the Column 70 ratings in other territories were applied by virtue of exceptions tariffs as to which there was some evidence in the record to show they were issued to meet motor *362 truck competition, we cannot say that the Commission ignored its own rulings or improperly applied the law.
Plaintiffs assert that the Commission stressed the element of value without taking into consideration the fact that the risk of loss was negligible on fuses of all types over a long period of years. However, the Commission mentions this fact in its report, and has indicated in the past that more significance is placed upon the value of a commodity than merely the extent to which it affects the risk of loss in transporting it. Rubber Ass'n of Am. v. Akron & B. B. R. Co., 174 I.C.C. 79, at 85.
The plaintiffs further assert that evidence as to value of other current-protective devices enjoying the 70% exception rating was ignored by the Commission. However, it is not the function of this Court to decide where the weight of the evidence lies, and what evidence shall be disregarded. Merchants' Warehouse Co. v. United States, 283 U.S. 501, 51 S.Ct. 505, 75 L.Ed. 1227.
The Commission has at times held that a classification which has long existed and is accorded long recognition is persuasive of its reasonableness, and at other times that such a factor is not conclusive. We cannot say as a matter of law that the Commission's reference to the long existence of the classification in this case is invalid.
The plaintiffs contend, lastly, that the Commission's orders are invalid because they have the effect of violating the long-and-short-haul provisions of Sec. 4 of the Interstate Commerce Act, 49 U.S.C.A. § 4. There is some evidence in the record that the first-class rates on "fuses, noibn" to border points in Official Territory exceeded the Column 70 exception rates to points just beyond the territorial border, although the former were generally intermediate to the latter. However, the plaintiffs made no such contention before the Commission, nor in the pleadings in this Court, and apparently relied upon the evidence only to attack the reasonableness of the first-class rate. Plaintiffs are not entitled to a trial de novo before the Court. Rochester Tel. Corp. v. United States, supra. Furthermore, the Commission suggests in its brief that at the time of these shipments there was in effect a Fourth Section Order of the Commission permitting such departures under the proviso of the law.
Upon the record as a whole, we cannot say that the orders of the Commission are arbitrary or capricious. They are rationally based on adequate findings and conclusions as to all the issues directed to its attention. These, in turn, find substantial support in the evidence. The plaintiffs' Complaint will, therefore, be dismissed.
NOTES
[1] The word "noibn" is a coined word meaning not otherwise indexed or classified by name.