CARLTON, Justice.
We now review a decision involving hearings before quasi-judicial administrative boards which has been certified by the District Court of Appeal, Third District, as being of great public interest. Fla. Const., Art. V, Section 4(2). The District Court’s opinion appears at 218 So.2d 495 (1969); the Circuit Court decision reviewed by the District Court appears at 30 Fla.Supp. 75 (Cir.Ct.1968).
In September 1966 the Dade County Pollution Control Officer issued an order commanding respondent to cease and desist the operation of its animal waste rendering plant because its emission of noxious odors created a health hazard. The Control Officer acted under the authority of, and in accordance with, the provisions of the Metropolitan Dade County Pollution Control Ordinance, Ord. No. 63-14, § 1.01, April 23, 1963.[1]
Respondent appealed this decision to the nine-member Pollution Control Board as provided for by § 24-6 of the Ordinance. A quorum of the Board held three successive evidentiary hearings before affirming the Control Officer’s order. Subsequently, the respondent obtained certiorari review in Circuit Court, Dade County, which was also provided for by § 24-6 of the Ordinance. Circuit Court reversed the Board after deciding that the hearing process had been tainted by two procedural defects which had deprived respondent of due process.
The first alleged defect involved a substitution in the membership of the reviewing panel of the Board which occurred between the first and second hearings. The initial hearing was attended by Board members Camfield, Eicher, Weyher, Daughtry and Belcher. The second hearing was attended by Camfield, Eicher and Weyher again, but Daughtry and Belcher were replaced by Gibson and Reed. At the third hearing Gibson, Reed, Camfield, Eicher and Weyher sat again; Daughtry and Belcher did not participate after the first hearing. The decision to affirm the Control Officer was made by the panel after the third hearing.
The Circuit Judge held that the substitution of Gibson and Reed for Daughtry and Belcher violated due process; it seemed to him that it was a “mockery to call a hearing a ‘fair trial’ when the one who decides has not even seen the witnesses.” 30 Fla. Supp. at 77.
Upon petitioner’s appeal, the District Court’s response to the above was as follows, 218 So.2d at 497:
“As we understand it, the opinion of the circuit court establishes the following rule: One who takes an appeal to a quasi-judicial administrative board is accorded due process of law only if each board member who participates in the board’s decision is present at every hearing during which testimony is taken. [Footnote omitted.]
“We find it unnecessary to announce so far reaching a rule in order to decide this appeal. An examination of the record on appeal convinces us that the ap-pellee was not accorded due process of law because there is no showing that each of the two Board members whose vote was necessary to affirm the cease and desist order did in fact read the record of *256 the hearing from which they were absent. Nor is there any showing that a full record of the hearing was made available to them. For these reasons, we affirm the judgment appealed.”
We think that the District Court correctly refrained from approving the position upon this point taken by the Circuit Judge. In Fla. Dry Clean. & Ldry. Board v. Econ. Cash & Carry Cleaners, Inc., 143 Fla. 859, 197 So. 550, (1940), we held that the entire membership of an administrative board need not sit as a body to hear evidence presented at a duly convened public hearing. In absence of statute or rule to the contrary, it logically follows that the composition of a reviewing panel of board members can change between hearings. One is entitled to a hearing by the Board, not by particular Board members.
Of course, any change in the panel must conform to due process. In the administrative law context, due process requires that Board members must base their judgment upon the evidence and testimony adduced at the hearings. This is generally thought to be a flexible requirement in that the mechanics of how a Board member gains an understanding of a cause is not particularly important so long as a competent understanding exists. See Morgan v. United States, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288 (1936); McGraw Electric Co. v. United States, 120 F.Supp. 354 (E.D.Mo.) aff’d 348 U.S. 804, 75 S.Ct. 45, 99 L.Ed. 635 (1954); 2 Davis, Administrative Law Treatise, § 11.02 (1958); Cooper, Administrative Agencies and the Courts, 215-220 (1951); Annotations, 18 A.L.R.2d 606-629.
Accordingly the question here is whether or not Gibson and Reed had the opportunity to form an informed judgment prior to their voting on the merits of the cause. Gibson clearly stated several times during the second hearing that he had read the transcript of the first session. For example, in his opening remarks as chairman at the beginning of the second hearing, he said, “Now, I have read the transcript of this meeting that we held here previously.” Shortly thereafter, he said, “I understand from reading the particular transcript of the hearing that allegations were made that certain things would transpire within the next few days before this meeting.” Reed did not comment for the record concerning any reading he may have done of the transcript, but counsel for the respondent noted at the hearing that a transcript was available.
In addition, a careful comparison of the transcript of the first hearing with that of the second hearing clearly reveals that the testimony adduced at the second hearing was essentially cumulative. In fact, the second session was a continuation of the first held on account of time limitations affecting the first hearing. Counsel for both litigants were given ample opportunity to extensively summarize what transpired the first time around. Likewise, much of what was said at the third hearing reflected upon what was proffered at the first two hearings.
Since Gibson and Reed attended the second and third hearings, and since the transcript of the first session was available to them, we fail to see, in view of the facts of this case, how their failure to sit in on the first hearing constituted a denial of due process. Accordingly, the District Court’s contrary holding upon this point must be reversed.
The second alleged defect concerned the activities of an Assistant County Attorney during the hearings. He apparently acted both as an assistant to the Pollution Control Officer and as a legal advisor to the Board. The Circuit Judge was of the opinion that, “[Wjhere such serious rights are involved the dual capacity of the county attorney is a serious departure from the essential requirements of law.” 30 Fla.Supp. at 78.
The District Court declined to pass upon this point since it had already affirm *257 ed the Circuit Court’s reversal of the Board after review of the first alleged defect. While we would agree that the procedure utilized in this case could be the subject of abuse, our review of the transcripts fails to suggest any impropriety here.
For the foregoing reasons, we hereby reverse the District Court’s decision and remand the case to that Court for further expedited proceedings not inconsistent with this opinion.
It is so ordered.
ERVIN, C. J., DREW and ADKINS, JJ., and CULVER SMITH, Circuit Judge, concur.

. It appears that the constitutionality of the Ordinance, a matter with which we are not now concerned, is being contested; see 218 So.2d 474 (3rd D.C.A.Fla.1969).